# WILLIAM B. EHLEN vs. CHARLES SELDEN, JR.

### Statute of Frauds—Alternative Contract.

Plaintiff agreed that he would hold in readiness for six months a designated sum of money and lend it to the defendant upon the security of a mortgage of certain land if requested so to do by the defendant within that time, and the defendant agreed to pay legal interest on the sum of money until the loan was made. *Held*, that this contract is not an agreement for the sale of an interest in land within the fourth section of the Statute of Frauds.

*Held*, further, that when the defendant did not apply for the loan on the mortgage security, he was liable for the interest on the sum for the stipulated period of time.

Appeal from the Superior Court of Baltimore City.

The cause was argued before McSHERRY, C. J., FOWLER, BOYD, and SCHUMCKER, JJ.

*E. M. Hammond* and *A. W. Machen, Jr.*, (with whom was *W. B. Coe* on the brief), for the appellant.

*John Phelps*, for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

The record now before us brings up the single question as to whether the ruling of the Superior Court of Baltimore City sustaining a demurrer to the declaration filed by the appellee against the appellant, is right. The declaration alleges that the defendant and the plaintiff orally agreed on January 9th, 1902, that the plaintiff would hold himself ready to lend to the defendant and would lend to him for one year at six per cent interest if requested by the defendant to do so, at any time after the date named and up to and including the 30th day of June of the same year, the sum of $65,000 to be secured by a first mortgage on a certain mine in West Virginia,

and that until such security were offered by the defendant
within the period indicated and until the loan was consum-
mated the defendant would pay the plaintiff legal interest on
said sum of $65,000 from January 9th, 1902: That the plain-
tiff did hold the sum of $65,000 in readiness to lend to the
defendant from said 9th day of January, 1902, until, up to and
including said 30th day of June, but the defendant did not
offer said security and did not call on and request the plaintiff
to make said loan within the period mentioned but on the con-
trary declined to accept the same, and that he refuses to pay
the said legal interest on the sum of $65,000 from January
9th, to June 30th, 1902, though often requested to do so. To
recover a sum equal to that interest the suit was brought.
The defendant demurred to the declaration, the Court sus-
tained the demurrer and gave judgment for the defendant and
from that judgment this appeal was taken by the plaintiff.

The grounds upon which the appellee, the defendant below,
relies to support the judgment sustaining the demurrer are as
follows: First, that the contract declared on being an oral one
stipulating for the mortgaging of land is within the Statute of
Frauds and cannot, therefore, furnish a cause of action; and
secondly, that the contract provides for two contingencies each
of which is dependent on the option or election of the defend-
ant, the appellee, according to one of which there was a
promise to pay the interest from January 9th, 1902, until the
mortgage security should be offered by the defendant within
the designated period and the loan should be consummated;
and according to the other of which upon the expiration of
the said period without the consummation of the loan there
was no promise to pay the interest at all.

*First.* It is true that a verbal agreement to mortgage land
is within the fourth section of the Statute of Frauds (*Alexan-
der* v. *Ghiselin,* 5 Gill, 138), and if the contract set out in the
declaration belongs to that class of undertakings, the action
cannot be maintained. But is there a term in the contract
obliging the appellee to execute or the appellant to accept a
mortgage conveying real estate? If there is not or if the con-

dition with respect to the mortgage is collateral to the sub-
stantive and predominant thing agreed to be done, then the
statute has no application and the contract is not affected by
it.   This principle is very well illustrated by the case of *Lamm*
v. *The Port Deposit Hom. Asstn.*, 49 Md. 233.   It appeared
there that Lamm purchased on September 12th, 1874, a house
and lot at a mortgagee's sale made by Mr. W. J. Jones, the
agent of the appellee mortgagee :   That the purchase was
made on the faith of represesentations of the agent that the
appellee would deliver possession of the property within three
months from the day of sale; and that possession was not ob-
tained until February, 1876.   Thereafter Lamm sued the
Homestead Association to recover the expenses incurred by
him in getting possession of the property and the loss of the
intermediate rents and profits.   The trial Court withdrew the
case from the jury, first, because the contract to deliver pos-
session was within the Statute of Frauds, and, secondly, be-
cause the contract was beyond the scope of the agent's au-
thority; and judgment was entered for the defendant.   On
appeal the judgment was affirmed by this Court not because
the contract was within the statute, but because it was beyond
the scope of the agent's authority.   In the course of the
opinion it was said :   "The fourth section of the Statute of
Frauds refers by its terms and meaning to contracts for the
sale of lands, &c., or any interest in or concerning them, and
not to collateral or independent undertakings outside of such
contracts, and does not apply to the representation, if any,
made at the sale in question."   In *Horner and Condon, Extrs.*,
v. *Frazier*, 65 Md. 1, this state of facts was shown :   David
Frazier sued Alexander H. Horner to recover damages for a
breach of contract.   The declaration stated that certain land
owned by the plaintiff was to be sold at trustee's sale and that
the defendant proposed to the plaintiff that the latter should
become the purchaser of the land at the sale, and promised
the plaintiff that if he would confess judgment in favor of the
defendant for the amount of a certain unfounded claim which
the defendant then held against the plaintiff, the defendant, in

consideration thereof, would advance and supply to the plaintiff all the money required to meet the payments of the purchase-money under said sale upon the understanding that the money which should be so advanced should be returned to the defendant by the plaintiff after the latter had effected a sale of the land so to be bought.    The plaintiff accepted the proposal and purchased the land on the faith of the agreement and then complied fully with his part of the contract by giving the confessed judgment for the unfounded claim, but the defendant failed to comply with his part of the agreement.    It was held that the contract was not one concerning an interest in land and was therefore not obnoxious to the fourth section of the Statute of Frauds.    A very similar case has been decided in the same way quite recently in England. *Boston* v. *Boston* (1904), 1 K. B. 124.

The thing which was agreed to be done by the appellant was to keep in readiness the sum of $65,000 for the purpose of loaning it to the appellee and if called on and requested to do so, to loan it to him, at any time between the dates named; and the thing which the appellee stipulated to perform was to pay interest on that amount.    As an incident to the chief term of the agreement, it was stated that the loan, if made, was to be secured by a first mortgage on a certain mine.    But the suit does not seek to recover for a failure to execute and deliver a mortgage; on the contrary it is for a failure to pay the interest stipulated to be paid, and stipulated to be paid without any reference whatever to the execution of a mortgage. There was no obligation on the part of the appellant to accept a mortgage to secure the loan.    If the loan transaction had been effected the appellant could have dispensed with the condition respecting the execution of the mortgage; and there is no term of the agreement which would have compelled him to accept a mortgage if he had elected to consummate the loan without requiring it.    There was, as the agreement is set forth in the declaration, no specific promise on the part of the appellee to execute a mortgage; and, on the other hand, there was no unconditional

promise by the appellant to accept a mortgage. The refer-
ence to the mortgage was entirely subsidiary to the agree-
ment of the one party to lend the money, and of the other
party to pay interest for a definite period of time.

A case strikingly in point is *Jeakes* v. *White*, 6 Exch. 873.
That was an action to recover the expenses incurred by the
plaintiff in investigating the defendant's title to mortgage cer-
tain lands, upon the ground that the defendant's title had
turned out to be defective. The declaration stated, that, in
consideration that the plaintiff would advance 2,000 pounds
upon the security of a mortgage of the land, upon the de-
fendant's making out a good title to mortgage the said lands
to the plaintiff, the defendant promised the plaintiff to pay him
the expense to which he might be subjected in case the loan
should go off by reason of the defendant changing his view, or
of the defectiveness of the defendant's title. At the trial before
Martin B. a verdict was directed to be entered for the plaintiffs
upon all the issues except two, and upon these issues a verdict
was entered for the defendant, leave being reserved to the plain-
tiffs to move to enter a verdict for them upon those issues also,
with 48 pounds, 14 shillings damages in case the Court should
be in favor of the plaintiffs upon both points. A rule *nisi* was
obtained in pursuance of the leave. During the argument it was
contended that the contract upon which the plaintiffs seek to
charge the defendant is a contract relating to an interest in
land. It is therefore within the fourth section of the Statute
of Frauds. The language of that section is not confined to
"a sale" of land, but extends to "any interest in or concern-
ing land." The plaintiffs' promise, which is the consideration
of the defendant's liability, clearly extends to an interest in
land, and therefore, the whole contract falls within the statute.
*   *   *   And the plaintiffs failed to prove a written con-
tract." Platt, B. interrupting the argument asked, "Was the
defendant bound to mortgage the lands?" And the counsel
answered, "possibly he was not." Thereupon Alderson, B.
observed, "The contract merely relates to the investigation of
a title, the parties agreeing that, in case the title should turn

out to be defective, the defendant should pay all costs of the investigation. The contract does not relate to any interest in land, and is not within the statute." Pollock, C. B., said, "We all think that is the true construction of the agreement."'

*Secondly.* We do not understand the agreement to provide for two contingencies each depending on the option of the appellee, and under one of which, if the loan had been made, the appellee would have been liable; and under the other of which, as the loan was not effected, he is not answerable. It is true the appellee had the right to complete or to decline the loan; and this suit was not brought to recover damages for his refusal to take the money. In consideration of the appellant holding the money in readiness to furnish it to the appellee, within the dates that have been named, the latter agreed to pay six per cent interest on the sum so held for him up to and including June the 30th, 1902, provided, before the last-named date arrived the loan were not actually made. The meaning of the agreement when translated into plain and direct language is, that in consideration of the appellant holding in hand the sum named so as to be ready to lend it to the appellee if he called for it between January 9th, and July the 1st, 1902, the appellee would pay to the appellant six per cent interest during that whole period, unless before the expiration of that period the loan were effected in which event interest would cease because it would then begin on the actual loan. As the appellant did not agree to hold the money longer than the last day of June, of course, there was no obligation on the part of the appellee to pay interest after that date; and as the appellee did not borrow the money within the time which the appellant held it for him, he became liable to pay the interest for the time, within the limits designated, during which it was the duty of the appellant to keep it in readiness to lend to the appellee and during which he did so keep it for that purpose.

It will be seen from the views we have expressed that we do not agree with the conclusion reached by the Court below

and its judgment sustaining the demurrer will be reversed and
a new trial will be awarded.

> *Judgment reversed with costs above and*
> *below and a new trial awarded.*

(Decided November 18th, 1904.)