## MOTELS OF MARYLAND, INC. *v.* BALTIMORE COUNTY

[No. 456, September Term, 1965.]

*Decided November 10, 1966.*

The cause was argued before HAMMOND, C. J., and MAR-
BURY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

*Mannes F. Greenberg* and *Joseph S. Kaufman,* with whom
were *Louis B. Price* and *Melnicove, Asch, Greenberg & Kauf-
man* on the brief, for the appellant.

*Harry S. Shapiro, Assistant County Solicitor of Baltimore
County,* with whom was *E. Scott Moore, County Solicitor,* on
the brief, for the appellee.

HAMMOND, C. J., delivered the opinion of the Court.

Motels of Maryland, Inc. sued Baltimore County to recover
$6,142.50 it had paid the County as a transfer tax when it re-
corded what it calls a "short form" of a written "leasing agree-
ment." Motels' theory was that it had paid the money under a
mistake of fact in that it had thought the initial writing trans-

ferred a leasehold interest in land and thus was subject to the County ordinance imposing a tax on recorded transfers of estates in land at the rate of three-quarters of one per cent of the value of the property transferred, when the fact was that the writing was no more than a present personal contract to execute a lease at a future time.

Since the County taxing ordinance did not establish a procedure for refunding taxes paid in error, Motels claimed in an amended declaration under the common counts for money payable and for money paid at the request of the County and five special counts. Count three alleged that Motels had entered into "an initial lease agreement" dated June 30, 1960, with the Bowches Corporation "covering the tract of land then owned by [Bowches] on the northwest corner of Loch Raven Boulevard and Joppa Road," and that the agreement provided for the erection of a motel and other improvements and "subsequently, the leasing of said improvements." It then was alleged that "the commencement of the term itself" was made contingent on the completion of the improvements and that Bowches had encountered financial difficulties and could not complete the improvements, "thereby precluding the commencement of the contemplated lease."

Count four alleged that after Bowches became unable to complete the improvements, Motels "mistakenly believing it had a leasehold interest in property to protect against a foreclosing mortgagee" of Bowches and should record that interest (when actually it had none—not even "any possible expectant interest"), recorded at the record office of the Circuit Court for Baltimore County on January 24, 1962, "a short form of the initial leasing agreement * * * said short form being dated November 9, 1961, and embodying the same agreement and pertinent terms as the aforedescribed initial agreement dated June 30, 1960," and that simultaneously Baltimore County "improperly and/or illegally charged and collected" from Motels a Baltimore County Realty Transfer Tax levied pursuant to Tax Resolution No. 8 (1962) of the County Council of Baltimore County in the amount of $6,142.50, and Motels "erroneously and/or mistakenly paid same tax" with "no consideration or benefit whatsoever [moving] to the Taxpayer in that the re-

cording of the short form of the initial leasing agreement failed to transfer any interest in any estate and failed to transfer any declaration or limitation of use" because Motels "could under no circumstances expect satisfaction of the condition precedent that said motel be finally constructed by The Bowches Corporation in that perfected mechanics' liens on the unfinished work and pending foreclosure proceedings by an intervening mortgagee made completion impossible."

Count five alleged that it would be unconscionable for Baltimore County to retain the tax it had collected since Motels had formed "a related corporation" which had bought the land involved from Bowches "in order that the construction of said motel might be completed," and when the transfer from Bowches to the related corporation was made Motels "through its related corporation, was again subjected to the payment of transfer tax and thus, in fact, was doubly taxed for the effectuation of but a single transfer."

Count six alleged a fruitless demand for refund, and Count seven reiterated the impropriety and illegality of the demand for the tax and the payment thereof.

Judge Menchine sustained the County's demurrer to the amended declaration holding that as a matter of law "the instrument" was one "transferring an estate in land" since "the words 'Estate' and 'Transfer' as used in the Tax Resolution include contingent estates" and the Resolution shows no legislative intent to grant a refund if a contingency becomes impossible. He concluded there had been no mistake in the payment of the tax. We think his action in sustaining the demurrer was correct.

Tax Resolution No. 8 (1962) of Baltimore County in § 1 levies a special tax "upon the transfer of any estate of inheritance or freehold, or any declaration or limitation of use, or any estate above seven years, in Baltimore County, at the rate of ¾ of 1% of the value of the property transferred" (in case of a lease for a term of more than seven years, not perpetually renewable, the tax is to be based upon the capitalization at ten per cent of the average annual rental over the entire term of the lease plus any other actual consideration other than rent). Section 21 defines the word "estate" as used in the Resolu-

tion to embrace "every description of real property including, but not limited to, fee simple estate, leasehold estate, limited estate, and legal and equitable interests in real property." The word "transfer" as used in the Resolution is defined to mean "the act of the parties, or of the law, by which the title to property is conveyed from one person to another."

Motels' claim in essence is that the short form it recorded was a synopsis or condensation of the "lease agreement" of June 30, 1960, the recordation of which is in substance and effect the recordation of the lease agreement, and that the lease agreement was not a lease which would have transferred a leasehold estate but no more than an agreement to make a lease at a future date which transferred no estate or interest.

A contract to make a lease of realty differs from a lease of realty in nature, effects and consequences, much as a contract to sell realty does from a conveyance of realty. Whether a writing constitutes a contract to lease or a lease is a matter of the real intention of the parties. Language which almost always would import a present demise may be found in light of the context and surrounding circumstances to constitute a personal contract to thereafter make a lease. On the other hand, language which almost always would be understood as a promise later to make a lease has been construed as constituting words of present demise, that is to say, a lease. The fact that there is in the writing a provision for the execution of a lease in the future, or a reference to such a lease, does not necessarily show that no more than an agreement for a future lease is intended since such language may be just a covenant of further assurance, a security for the execution of a more formal instrument. A writing may be a lease though it does not give a right to immediate possession since a lease for years may create an estate to commence in futuro. 1 Tiffany, *Landlord and Tenant,* §§ 62 and 63 (1912) ; 1 *American Law of Property* § 3.17 (Casner ed. 1952) ; 51 C. J. S. *Landlord and Tenant,* §§ 184 and 185; 32 Am. Jur. *Landlord and Tenant,* § 28.

Thus the allegations of fact of the amended declaration do not permit a precise or accurate determination of whether the initial agreement of June 30, 1960, which is referred to by the equivocal label of "leasing agreement" was a lease or a con-

tract to lease. However, the crucial document was not the initial agreement but the so-called "short form" that was recorded. There is no statutory provision or warrant for recording a shortened version of a longer writing as the equivalent of the longer. The writing that actually is recorded must meet the statutory requirements for a paper that is recordable and it stands on its own and has the character its terms and provisions give it. A short recorded writing dealing with the subject matter of a preexisting unrecorded longer writing may have the same character as the longer writing, or a different character. If in this case the longer writing was only an agreement to make a lease, rather than a lease, that would not prevent the short form actually recorded from being a present lease if its terms made it so.[1]

---

1. The so-called short form of "leasing agreement," having been recorded in Record Book 3949 of the Land Records of Baltimore County, page 1, is a public record. It consists of three typewritten pages, with a plat of the property involved attached on a fourth. The paper begins: "THIS LEASE, Made this 9th day of November, 1961, between * * * Bowches * * * Landlord * * * and Motels * * * Tenant," Witnesseth that "in consideration of the mutual covenants and agreements herein contained and for the consideration of Ten ($10.00) Dollars and other good and valuable considerations paid by the Tenant to the Landlord," The Landlord "does hereby demise and lease unto Tenant, and the Tenant hereby leases from the Landlord, upon and subject to the terms, covenants and conditions set forth in a certain lease agreement between Landlord and Tenant bearing the date of June 30, 1960, hereinafter called Agreement," the property at the northwest corner of Loch Raven Boulevard and Joppa Road as shown on the attached plat. It is then recited that the Landlord "proposes" to erect a motel on the property and that the Tenant will pay a minimum annual rental of $81,900. The Tenant is to have and to hold the property for twenty years with an option to renew for three more consecutive twenty-year terms. There is the further agreement that: "Each of the parties hereto agrees upon demand of the other to execute a declaration in recordable form, expressing the commencement and termination dates of the original period of this lease as soon as the commencement date has been determined." A further statement was that: "The purpose of this agreement is to record some of the basic terms of Agreement and all of the terms, covenants and conditions of Agreement are deemed by this reference to be included herein as if they had been fully set forth." Bowches and Motels

The amended declaration alleges that Motels recorded "a short form of the initial leasing agreement * * * said short form * * * embodying the same agreement and pertinent terms as the aforedescribed initial leasing agreement dated June 30, 1960." If the characterization of the short form be treated as an allegation of fact, it cannot be determined whether it was a lease or a contract to make a lease inasmuch as the allegations of the amended declaration as to the initial "leasing agreement" leave the matter in doubt. Whichever it was Motels is not helped since Tax Resolution No. 8 makes taxable the transfer of "every description of real property including * * * real and equitable interests in real property"; if it was a present lease, it transferred a leasehold estate (that is, a legal interest in land); if it was a contract to make a lease, it transferred to or created in Motels an equitable interest under the broad, almost all embracing sweep of the language of the transfer tax ordinance. In either case Motels became subject to the transfer tax.

1 *Restatement, Property* § 6, points out that interests in land are legal and equitable and that "an equitable interest is that kind of an interest which has its origin in the principles, standards and rules developed by courts of chancery." 30 C. J. S. *Equity* § 60, recognizes that an equitable interest in land is an interest which is not a legal estate but a right to have the legal title transferred, a right which a court of chancery will recognize, not by virtue of a chancellor's sense of moral right but under the established rules and principles of equity jurisprudence. 1 Pomeroy, *Equity Jurisprudence,* § 146 (5th ed. Symons 1941), says much the same things and suggests that an equitable interest is to be differentiated from a mere equity, saying "a *cestui que trust,* a mortgagee, a vendee in a contract for the sale of land, is clothed with an equitable estate or interest; while the *mere* right to have an instrument reformed or cancelled, or to have a security marshalled, and the like, is properly 'an equity.' "

That equity treats a contract of sale of real estate as trans-

---

executed the "short form" by their respective presidents, attaching the respective seals, and each president acknowledged the instrument.

ferring an equitable estate or interest to the vendee, leaving the vendor the holder of the bare legal title, is firmly established in Maryland. *Stebbins-Anderson Co. v. Bolton,* 208 Md. 183, and cases cited; *Register of Wills v. Madine,* 242 Md. 437, 443; *Burke v. Burke,* 204 Md. 637, 645; *Takacs v. Doerfler,* 187 Md. 62, 66; *Kinsey v. Drury,* 146 Md. 227, 232. It is equally firmly established of course that equity ordinarily will transform the equitable interest of a vendee into a legal estate by granting specific performance of the contract to sell and convey. *Trotter v. Lewis,* 185 Md. 528; *McKeever v. Washington Heights Realty Corp.,* 183 Md. 216, 225. *Cf. The Glendale Corp. v. Crawford,* 207 Md. 148, 154, 157-58, and *Perlmutter v. Bacas,* 219 Md. 406.

That a contract to convey a lesser estate than a fee creates an equitable interest which equity ordinarily will transform into an equivalent legal estate seems logically inescapable. In 4 Williston, *Contracts* (rev. ed. 1936), the learned author comments in § 928 on the old rule that a purchaser under a contract of sale of realty is not excused from fulfilling his promise to purchase by any accidental injury to the property, and in § 936 notes that

> "* * * a contract to sell real estate may be specifically enforced against the vendor; and not only against the vendor, but against anyone who, with notice of the purchaser's rights, takes title from the vendor. In a majority of the United States, moreover, by recording his contract, when it is in a recordable form, the purchaser is able to charge everyone with constructive notice of his rights. He thus acquires in effect a right *in rem.*"

Williston goes on to discuss the risk of loss in cases of damage to or destruction of leased property, and in § 945 says:

> "It is also true, though it is not clearly admitted in the cases, that a contract to make a lease should stand on the same footing as a contract to convey a freehold estate. If one who contracts to purchase a fee immediately becomes owner thereof in equity, one who

contracts for the conveyance of a lesser estate should become the owner in equity of that estate."

See also 1 Tiffany, *Landlord and Tenant*, § 62, p. 371 (1912).

In *Takacs v. Doerfler*, 187 Md. 62, 66, Judge Henderson for the Court said:

> "In equity, an executory contract of sale is given full effect as a transfer of the equitable interest. * * * While the cases in which this principle is recognized are generally cases where the ownership is in fee, we see no distinction where an absolute power of alienation is annexed to a lesser estate."

*Mills v. Matthews*, 7 Md. 315, and *Lenderking v. Rosenthal*, 63 Md. 28, were both cases in which there were agreements to make a ground rent lease of a lot on which the prospective lessee agreed to build houses to be subject to the ground rents. The rents were to commence when the houses were completed. *Mills* held that equitable rights, characterized as "an equitable title" which would have supported specific performance, were vested in the prospective lessee. In *Lenderking*, Chief Judge Alvey found *Mills* controlling and regarded the prospective lessee as having an "equitable leasehold interest" which could have been converted to a legal estate by the granting of specific performance had the prospective lessee performed the conditions he had assumed in the contract.

Many other Maryland cases, by decreeing specific performance of contracts to make a lease, have recognized the equitable interest in land which passes to a prospective lessee under a contract to make a lease. Judge Markell, for the Court, in *Serio v. Von Nordeck*, 189 Md. 388, 393, said: "* * * it is no more difficult to enforce a contract to lease than a contract to sell." See also *Read Drug & Chemical Co. v. Nattans*, 129 Md. 67; *Thompson v. Thomas & Thompson Co.*, 132 Md. 483, 485; *Liggett Co. v. Rose*, 152 Md. 146; *Schluderberg v. Dietz*, 156 Md. 547; *Kikas v. County Commissioners of Baltimore County*, 200 Md. 360, 365.

Motels presented for recording either a lease which admittedly would have been taxable under Tax Resolution No. 8 or a contract to lease, as Motels argues. Assuming the paper to have

been a contract to lease, on its face it transferred an immediate equitable interest in land to Motels, in recordable form, and Tax Resolution No. 8 applied and required the payment of the specified transfer tax. If it developed later that a court of equity would not for some sound reason decree specific performance of the contract, this would not keep the contract to lease from having been a transfer of an estate within the meaning of the Tax Resolution, when it was presented for record. Even on Motels' version, the initial agreement validly transferred an interest in lands to Motels when it was executed in June 1960. The short form which Motels alleged embodied "the same agreement and pertinent terms" as the initial agreement presumably also transferred at least the same interest in land when it was executed in recordable form in November 1961, since there is no allegation by Motels to the contrary. The amended declaration does allege that at the time of its recordation in January 1962 the short form would not have transferred equitable title because the prospective landlord then could not perform the promise to complete the improvements on the land to be leased and a chancellor would not have granted Motels specific performance. There is no allegation as to when this alleged impossibility of performance became ascertainable or final; certainly no court had declared that Motels had no equitable interest or that specific performance would not be granted it. As the allegations of its amended declaration reveal, Motels, in order to complete and have the use of the motel, did acquire, through a corporate alter ego, fee simple title to the property it had contracted to lease. It is not apparent why the same end result could not have been achieved by Motels' seeking specific performance and paving the way either by waiving completion of the improvements or by causing the motel to be completed by the use of rental money it thereafter would owe Bowches under the leasing agreement. Indeed, it may well be that the recorded short form was the lever that enabled Motels to require Bowches to convey to it fee simple title so that Motels could effectuate completion and possession of the motel.

In any event we think that whatever doubts Motels had as to its specific enforceability at the time it recorded the short form did not prevent the contract to lease which the short form

constituted, assuming it to have been that, from then effecting a transfer of an equitable interest in land as it purported in form and substance to do.

Motels, we think, is no more entitled to a refund of the transfer tax it paid than would be the recorder of a contract of sale of realty seemingly valid in form and substance which later is judicially held not to warrant specific performance, or the recorder of a similar deed later judicially held invalid because of mistake or fraud. The clerk of court who is required to collect the transfer tax by the Tax Resolution cannot be expected to divine that one who presents for record a paper which ostensibly and reasonably purports to transfer a taxable interest either does not think that it does or later turns out to have been mistaken in a belief that it does. Nor can the clerk be required to act as a chancellor by going outside the proffered paper to resolve its effectiveness to accomplish what it is offered to and seems to accomplish.

*Judgment affirmed, with costs.*