705 A.2d 1158

**PRINCE GEORGE'S COUNTY, Maryland**

**v.**

**Sidney J. BROWN.**

**No. 27, Sept. Term, 1997.**

Court of Appeals of Maryland.

Feb. 18, 1998.

J. Michael Dougherty, Jr., Associate County Attorney (Barbara L. Holtz, Acting County Attorney; Maurene Epps Webb, Acting Deputy County Attorney, on brief), Upper Marlboro, for petitioner.

Robert Ostrom, Goldstein & Baron, Chartered, on brief, College Park, for respondent.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW, RAKER and WILNER, JJ., and ROBERT L. KARWACKI, Judge (retired), Specially Assigned.

RODOWSKY, Judge.

In this case the mortgagor under a commercial mortgage securing future advances seeks a refund of Prince George's County transfer taxes on the ground that no advances were or will be made under the mortgage. The Court of Special Appeals ordered that the taxes be refunded. *Brown v. Prince George's County*, 114 Md.App. 242, 689 A.2d 1245 (1997). We shall reverse for the reasons set forth below.

## I

Three enactments are relevant to the refund claim in the instant matter. They are the Prince George's County, Maryland (the County) transfer tax ordinance, the Maryland recordation tax statute, and the Maryland statute recognizing mortgages for future advances.

Prince George's County Code (1995 ed.) (the County Code), § 10–188(a) provides in relevant part as follows:

"A tax is imposed at the rate of one and four-tenths percent (1.4%) of actual consideration paid or to be paid under every instrument of writing conveying title to real property, or any interest therein, in the County, offered for record and recorded in the County[.]"

This ordinance expressly includes mortgages and deeds of trust within the term, "instrument of writing." County Code § 10–188(d). Further, "[u]pon any refinancing of property by

the original mortgagor or mortgagors, the tax shall apply only to the consideration over and above the amount of the original mortgage or deed of trust." *Id.*

The County has imposed a transfer tax since 1957. Chapter 784 of the Acts of 1957. The language of tax imposition now found in County Code § 10–188(a) is nearly identical to the original imposition under Chapter 784.[1]

The statutes concerning the Maryland recordation tax are codified in Maryland Code (1986, 1994 Repl.Vol.), Title 12 of the Tax–Property Article (TP). That tax is imposed on an instrument of writing recorded with the clerk of a circuit court or with the State Department of Assessments and Taxation. TP § 12–102. In the recordation tax scheme "instrument of writing" includes mortgages and deeds of trust. TP § 12–101(c)(2)(ii). The recordation tax makes special provision for mortgages for future advances in TP § 12–105(f). In substance, the tax applies only to the principal amount of debt incurred at the time of recording. TP § 12–105(f)(1). When any additional debt is incurred, the debtor is expected to come forward and pay the recordation tax on the new amount. TP § 12–105(f)(2). Alternatively, the borrower may pay, upon recording, the tax on the maximum principal amount secured by the instrument, even though that amount has not been advanced at the time of recording. TP § 12–105(f)(4).[2] The

---

1. Chapter 784 of the Acts of 1957 added § 464C to the Code of Public Local Laws of Prince George's County (1953 ed.). In relevant part, § 464C(a) read:

    "A tax is hereby imposed at the rate of one-fifth of one per centum of the actual consideration paid or to be paid under every instrument of writing conveying title to real property, or any interest therein, in Prince George's County, offered for record and recorded in said County.... The term 'Instrument of Writing' shall include deeds, mortgages, deeds of trust...."

2. The text of TP § 12–105(f)(1) through (4) is:

    "(f) *Partial debt.*—(1) Except as provided in paragraph (4) of this subsection, if the total amount of secured debt has not been incurred at the time of recording or filing the instrument of writing, the recordation tax applies only to the principal amount of the debt incurred at that time.

Maryland recordation tax dates to Chapter 11 of the Acts of 1937, and the provision deferring the tax on amounts to be advanced under a mortgage or deed of trust after recordation was added by Chapter 277 of the Acts of 1939. Thus, a model for deferred tax was extant when the public local law of 1957 created a transfer tax in the County.

The third enactment relevant to our analysis is Maryland Code (1974, 1996 Repl.Vol.), § 7–102 of the Real Property Article (RP). This statute recognizes the lien effected by a mortgage for future advances up to "the aggregate principal sum appearing on the face of the mortgage or deed of trust and expressed to be secured by it, without regard to whether or when advanced or readvanced." RP § 7–102(a)(1). The priority of future advances is governed by § 7–102(b) that provides in relevant part as follows:

"If after the date of the mortgage or deed of trust, any sum of money is advanced or readvanced . . . priority for such sum of money . . . dates from the date of the mortgage or deed of trust as against the rights of intervening purchasers, mortgagees, trustees under deeds of trust, or lien creditors, regardless of whether the advance, readvance, endorsement, or guaranty was obligatory or voluntary under the terms of the mortgage or deed of trust."

RP § 7–102 was part of the revision of the laws relating to real property enacted by Chapter 349 of the Acts of 1972. The 1972 enactment eliminated restrictions on mortgages for future advances which were set forth in Maryland Code

---

"(2) Except as provided in paragraphs (3) and (4) of this subsection, on or before 7 days after any additional debt is incurred after recording or filing an instrument of writing, a statement under oath of the amount of additional debt shall be filed with the clerk of the circuit court or with the Department, and the recordation tax shall be paid on the additional debt by the debtor.

"(3) If the additional debt under paragraph (2) of this subsection is applied to repayment of the debt previously incurred, the recordation tax does not apply to the additional debt.

"(4) The recordation tax may be computed and paid on the maximum outstanding principal sum, however expressed, that is stated to be secured by the instrument of writing, without regard to the amount of secured debt actually incurred, advanced, or readvanced."

(1957), Art. 66, § 2. The restrictions of Art. 66, § 2, however, did not apply in the County (or in Baltimore County). *See* Maryland Code (1957), Art. 66, § 3; *Welsh v. Kuntz,* 196 Md. 86, 98, 75 A.2d 343, 347–48 (1950). Consequently, in 1957, when the County imposed a transfer tax, the legal effect of mortgages or deeds of trust securing future advances that were recorded in the County was substantially that later achieved under the statewide provisions of RP § 7–102(a)(1) and (b).

## II

In the instant matter the taxpayer, Sidney J. Brown (Brown), seems to have had an ongoing business relationship with a banking institution that has undergone a number of acquisitions and that we shall call "Sovran." In June 1991 Brown was indebted to Sovran for $2,824,102.15 (the Old Debt) on a loan originally in the amount of $5 million that was secured by a deed of trust on, *inter alia,* real estate in the County. On June 5, 1991, Sovran issued a commitment to Brown to lend him an additional $2,015,897.85 (the New Debt). Brown's purpose in obtaining the commitment was to use the New Debt to pay off a loan to another lender. Pursuant to the commitment a "modification agreement-deed of trust and security agreement," dated June 26, 1991 (the Deed of Trust) in the face amount of $4,840,000 was recorded on June 28, 1991, among the land records of the County. A handwritten insert at the foot of page two of the Deed of Trust advised that "[t]his Deed of Trust is being modified from $2,824,012.15 to $4,840,000.00 with no funds being advanced at this time." Upon the recording Brown paid a transfer tax in the amount of $30,238.46 calculated at the then rate of one and one-half percent on the New Debt.

Although the June 5, 1991 commitment is not in evidence, it is undisputed that that commitment was subject to conditions. No funds were ever advanced under the Deed of Trust because Brown had not met one or more conditions of that commitment. On July 14, 1992, Brown and Sovran agreed that his outstanding loan with Sovran would not exceed

$2,781,055, the amount to which the Old Debt had been amortized. On August 6, 1992, Brown and Sovran entered into a "second modification agreement-deed of trust note" providing, *inter alia*, that Sovran " 'shall not be obligated to advance any additional proceeds of the loan evidenced hereby after July 14, 1992.' " Consequently, Brown not only had not borrowed any of the New Debt, but he would be unable to borrow any of the New Debt in the future.

Brown thereafter sought, under TP § 14–908, a refund of the transfer tax on the Deed of Trust from the County's Director of Finance. That statute in relevant part reads:

"A person who submits a written refund claim for transfer tax that has been erroneously or mistakenly paid to or illegally or erroneously assessed or wrongfully collected by . . . the Director of Finance in Prince George's County . . . is eligible for a refund from the . . . Director of Finance. . . ."

The Director rejected Brown's refund claim.

The Maryland Tax Court affirmed. That agency found it to be "very clear that at the time that this tax was collected, and Mr. Brown admits the same, that this tax was in fact due." Consequently, ruled the Tax Court, the tax was not erroneously or mistakenly paid, and Brown was not entitled to a refund.

On judicial review of the agency decision the Circuit Court for Prince George's County affirmed. That court concluded that the "proper measuring time to determine whether consideration is adequate is at the time of recording. Hence, Brown's expectation satisfies the criteria for 'consideration to be paid' utilized at the time of recording." Accordingly, the circuit court concluded that there was no error or mistake within the meaning of the refund statute.

The Court of Special Appeals reversed. The heart of that court's analysis is the following passage:

"At the time of recording, because [Brown] expected to receive additional funds, he was required to pay the full tax assessment. The record reveals that, at the time the 1991 Modification was recorded, [Brown] did, in fact, expect 'to

be paid' by Sovran the consideration for which the additional transfer tax was collected. Sovran, however, never advanced any additional funds beyond those due from prior obligations. Under these circumstances, (1) [Brown] did not receive actual consideration, (2) the tax was erroneously paid, and therefore (3) he is entitled to a refund."

*Brown*, 114 Md.App. at 245, 689 A.2d at 1246 (footnote omitted).

Thereafter, we granted the County's petition for certiorari. The County here argues that under TP § 14–908 Brown was not entitled to a refund because the taxes were not erroneously paid when the Deed of Trust was recorded. Brown argues that there was no consideration to support the payment of the tax and that TP § 14–908 authorizes the refund.

## III

Brown submits that there was no actual consideration for the transfer by him to Sovran of a lien on Brown's real estate. We have recently reiterated that "[u]nder our decisions ... 'a benefit to the promisor or a detriment to the promisee' [is] sufficient to constitute 'valuable consideration.'" *Harford County v. Town of Bel Air*, 348 Md. 363, 382, 704 A.2d 421, 430 (1998). The consideration for Brown's increase of Sovran's lien was Sovran's legally enforceable promise to advance the New Debt. *See, e.g., Ehlen v. Selden*, 99 Md. 699, 59 A. 120 (1904) (prospective lender under commitment for a construction loan entitled to agreed upon standby fee, although borrower never exercised right to require that loans be made). Further, the fact that Sovran's commitment of June 5, 1991, was subject to conditions does not impair the legal efficacy of Sovran's promise. "A conditional promise may be consideration, and 'when a man acts in consideration of a conditional promise, if he gets the promise he gets all that he is entitled to by his act, and if, as events turn out, the condition is not satisfied, and the promise calls for no performance, there is no failure of consideration.'" 3 S. Williston, *A Treatise on the Law of Contracts* § 7:18, at 346–47 (R.A. Lord

ed., 4th ed. 1992) (quoting *Gutlon v. Marcus*, 165 Mass. 335, 43 N.E. 125 (1896)).

Brown emphasizes that the County transfer tax rate is applied to the *actual* consideration paid or to be paid. In *Dean v. Pinder*, 312 Md. 154, 538 A.2d 1184 (1988), we noted that the dictionary definition of "actual" includes " 'existing now; present, current.' " *Id.* at 161–62, 538 A.2d at 1188. That case involved a transfer of the fee simple title to realty in Kent County by deed from the shareholders of a corporation to the corporation, after a transfer tax had been paid by the shareholders on their acquisition of the realty from prior ownership. The Kent County transfer tax applied the rate to the "actual" consideration. The transfer to the corporation was subject to the Kent County transfer tax despite the absence of payment in money or property by the corporation to its shareholders as consideration for the deed. We held that the increase in value of the shareholders' stock in the corporation, which prior to the transfer had had no assets, constituted consideration to be measured by the value of the realty as evidenced by the purchase prices paid by the shareholders to their grantors. We rejected the argument that actual consideration was restricted to money or other tangible property which changed hands at the time of the transfer being taxed. *Id.* at 162, 538 A.2d at 1188–89.

In *Dean* we also referred to the fact that the modifier, "actual," had been dropped from "consideration" in the revision of the recordation tax statutes effected by Chapter 8 of the Acts of 1985. *See Dean*, 312 Md. at 162–63, 538 A.2d at 1189. *Compare* Maryland Code (1957, 1980 Repl.Vol.), Art. 81, § 277(b)(1) (generally providing a rate of fifty-five cents per $500 units of "the actual consideration paid or to be paid") *with* TP § 12–103(a) (rate applied to $500 units "of consideration payable or of the principal amount of the debt secured.").[3] Nevertheless, the revisor's note following Maryland

---

3. Maryland Code (1957, 1980 Repl.Vol.), Art. 81, § 277(r) specially provided for a rate in the County of $1.65 for each $500 unit "of the actual consideration paid or to be paid."

Code (1986), TP § 12–103, advises that the section "is new language derived without substantive change from the description of the units to which the recordation tax rate[ ] in former Art. 81, § 277(b)(1) [is] applied." Thus, the General Assembly did not believe that "actual" substantially contributed to the intended meaning of "consideration" in the recordation statute. Rather, the Legislature's view of these changes indicated "that the word 'actual' was not intended as the restrictive modifier that the [taxpayers] suggest[ed]." *Dean*, 312 Md. at 163, 538 A.2d at 1189. Just as money or tangible property need not have been paid at the time of recording of the deed to the corporation in *Dean* for there to have been actual consideration, so, here, the word "actual" does not require that the loan proceeds be advanced at recording. Brown received "actual" consideration.

Brown argues that "the true value of the transaction was zero." Appellee's Brief at 9. In our view the controlling issue in this case is whether the consideration moving to the transferor, Brown, was correctly valued at the time of recording. The instrument of writing on which the tax was paid, the modification agreement-deed of trust and security agreement recorded June 28, 1991, recites that

> "Grantor [Brown] is justly indebted unto Sovran … for money borrowed in the principal amount of FOUR MILLION EIGHT HUNDRED FORTY THOUSAND and * * * NO/100 DOLLARS ($4,840,000.00), for which amount the said Grantor has made and delivered a certain Deed of Trust Note (the 'Note') of even date herewith in the principal amount hereinabove recited."

The longhand insertion following this recital explains that the principal amount secured by the Deed of Trust consists of the Old Debt and the New Debt. As pointed out in Part I of this opinion the County transfer tax does not follow the model of the Maryland recordation tax and permit deferral of the payment of the tax until the New Debt is advanced. The County transfer tax places no burden on the clerk to attempt to compute the probabilities of whether future advances will in fact be made. Absent a County provision similar to the state

recordation tax provision that expressly permits deferral of the payment of the tax until future advances are made, there is no way in which the County's transfer tax can be administered other than by valuing the "actual consideration ... to be paid" by the maximum amount that may be advanced. In this case that is the recited $4,840,000 of indebtedness, less the refinanced Old Debt.

The Court of Special Appeals read Brown's expectations into the tax statute. *Brown,* 114 Md.App. at 245, 689 A.2d at 1246 ("The record reveals that, at the time the 1991 Modification was recorded, [Brown] did, in fact, *expect* 'to be paid' by Sovran...." (Emphasis added)). That mode of analysis is inconsistent with *Motels of Maryland, Inc. v. Baltimore County,* 244 Md. 306, 223 A.2d 609 (1966), involving the Baltimore County transfer tax. In that case the prospective developer of a motel recorded, and paid transfer taxes on, a "short form" of what it thought was a lease to it of the motel site, but the written instrument underlying the "short form" was not a lease but a contract to lease. Financial difficulties of the "lessor" prevented any lease from ever taking effect. On that basis the developer sought a refund. We held that the contract to lease transferred an equitable leasehold title to the prospective lessee at the time of recording, so that the transfer tax had properly been paid. The fact that the lease was never entered into did not give rise to a right to a refund. In that connection we said:

> "Motels, we think, is no more entitled to a refund of the transfer tax it paid than would be the recorder of a contract of sale of realty seemingly valid in form and substance which later is judicially held not to warrant specific performance, or the recorder of a similar deed later judicially held invalid because of mistake or fraud. The clerk of court who is required to collect the transfer tax by the Tax Resolution cannot be expected to divine that one who presents for record a paper which ostensibly and reasonably purports to transfer a taxable interest either does not think that it does or later turns out to have been mistaken in a belief that it does. Nor can the clerk be required to act as a chancellor

by going outside the proffered paper to resolve its effectiveness to accomplish what it is offered to and seems to accomplish."

*Id.* at 317, 223 A.2d at 615.

In support of his position Brown cites the opinion of the Attorney General of Maryland reported at 43 Op. Att'y Gen. 353 (1958). The question there presented was whether, under the Maryland recordation tax, the borrower under a construction loan who had paid at the time of recording the recordation tax on the entire principal sum that could be advanced, was entitled to a refund when no advances in fact had been made. The Attorney General opined, without citation to authority, that a refund would be available. *Id.* at 353–54 ("It is obvious that the Legislature only intended to tax the amount of debt actually incurred and secured. Until such time as the corporation has actually received money under the trust, no debt has been incurred and secured and no taxes are payable.").

For purposes of the instant matter, we need not analyze whether the Attorney General's opinion was correct under the statutes and case law dealing with the refund of taxes at that time. It is sufficient to note that the taxpayer involved in the problem presented to the Attorney General was not legally obligated to pay any recordation tax at the time of recording, due to the special provision concerning future advances that has been in the Maryland recordation tax statute since 1939. In the matter before us, there is no such special provision, and Brown was properly required to pay transfer tax on the actual consideration, valued by the New Debt.

In a sense, Brown argues for a second look at liability for the tax. Although he does not challenge the computation of the tax at the time of recording, he asks that the transaction be reevaluated after Sovran's commitment had terminated due to the non-occurrence of its conditions. No provision, however, in the County's transfer tax statutes entitles a taxpayer to that second look. Further, TP § 14–917(a), dealing with the payment of interest on refunds of transfer taxes, provides that "interest shall be paid ... from the date that the tax was

paid."[4] This strongly indicates that the Legislature contemplated that the validity of an application of a transfer tax would be determined at the time of recording and not at some indeterminate time after the fact. The requirement that interest be measured from the date of payment of the tax would mean, under a second look application, that the interest would include the period during which the commitment to make future advances was conditionally enforceable. It is unlikely that the General Assembly intended that result.

Here, the transfer tax was not "erroneously or mistakenly paid to or illegally or erroneously assessed or wrongfully collected by" the Director of Finance in the County. Accordingly, TP § 14–908, the refund statute, does not apply.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT FOR THE ENTRY OF A JUDGMENT AFFIRMING THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT, SIDNEY J. BROWN.**

---

**4.** TP § 14–917(a) and (b) provides:

"(a) *Recordation tax and transfer tax.*—Except as provided in subsection (b) of this section, interest shall be paid on a refund claim under § 14–907 or § 14–908 of this subtitle at the rate of 6% a year on the amount of the refund from the date that the tax was paid.

"(b) *Exceptions.*—Interest may not be paid on a refund claim based on a mistake or error that is attributable only to the claimant and not to the Department, a clerk of the court, or the Director of Finance in Prince George's County."