735 A.2d 614 (1999)
324 N.J. Super. 357
In the Matter of the ESTATE OF Arthur A. ROCCAMONTE, Sr.
Mary Sopko, Plaintiff-Appellant,
v.
The Estate of Arthur A. Roccamonte, Sr., Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued August 6, 1999 (by telephone).
Decided August 19, 1999.
*615 Michael J. Breslin, Hackensack, for plaintiff-appellant (Breslin & McNerney, attorneys; Michael J. Breslin, of counsel; Mary E. Breslin, Middletown, R.I., on the brief).
Joel C. Seltzer, Union, for defendant-respondent (Mr. Seltzer, of counsel and on the brief).
Before Judges KESTIN and FALL.
The opinion of the court was delivered by KESTIN, J.A.D.
Plaintiff, Mary Sopko, appeals from a final order entered in the Chancery Division, Probate Part, Union County, granting the summary judgment motion of defendant, Estate of Arthur A. Roccamonte, Sr., and dismissing the complaint. An interlocutory order entered in the Chancery Division, Probate Part, Essex County is also challenged on appeal. That order was based upon a denial of plaintiff's motion to return the matter to the Family Part in Essex County, instead transferring it to the Probate Part in Union County. We denied plaintiff's timely motion for leave to appeal. For the reasons articulated herein, we now affirm the interlocutory order and reverse the final order; and remand to the Probate Part, Union County for such proceedings as may be required to conclude the matter.
Plaintiff sought lifetime support from the decedent's estate in a two-count complaint alleging an express oral contract as well as a quantum meruit and unjust enrichment basis for her claim of entitlement. The matter was initially filed in the Chancery Division, Family Part, Essex County, with a jury trial demand. On October 11, 1995, the trial court clerk's office rejected the suit papers for filing in the Family Part, with a question on the transmittal form: "Does this belong in Superior Court or Surrogate?" Some three months later, the complaint was accepted for filing in the Family Part. Plaintiff then moved to transfer the matter to the Chancery Division, Probate Part. That motion was granted on May 10, 1996; but on May 14, 1996, the trial court entered another order denying the motion. The latter order contained the recital: "This is a palimony case against an estate." Then, on June 13, 1996, the May 14 order was, sua sponte, "set aside and the matter ... transferred from the Chancery Division, Family Part to the Chancery Division[,] Probate Part" as plaintiff had sought.
Issue was joined on June 11, 1996. Some time later, plaintiff moved for return of the matter to the Family Part. The motion judge in the Essex County Probate Part decided that motion in a letter opinion dated March 26, 1997:
Plaintiff cites to [R.] 5:1-2, which establishes the Family Part as the division to handle all claims that arise out of "family or family-type relationships." However, R. 4:3-1(b) indicates in pertinent part that "actions transferred from one division to another shall not be retransferred," and would prevent this Court from ordering another transfer.
In addition, the palimony cases cited to by plaintiff are inapposite of this matter, since palimony suits are predicated on the fact that both parties to the suit *616 would still be living, whereas one of the parties to this action is deceased. See Lopatkin v. Lopatkin, 236 N.J.Super. 555, 566 A.2d 559 (Ch.Div.1989). Although the case law is clear that, under certain circumstances, the Family Part has continuing jurisdiction after the death of a party to a divorce action, the parties in such instances were divorced prior to the death of one of the spouses, and thus the right sought to be enforced stemmed from a judgment already entered [in the] Family Part.... Id. at 557, 566 A.2d 559. This is not the case here. Mr. Roccamonte died prior to the institution of this suit, and thus the matter was not brought while he was still alive, thereby curtailing the jurisdiction of the Family Part.
This Court finds that the proper venue for this matter lies in Union County, precisely because this lawsuit involves the Estate of Arthur Roccamonte, of which Doreen Slackman is the administratrix. [R.] 4:83-2 states that:
In all matters relating to estates of decedents, trusts, guardianships and custodianship, other than those set forth in R. 4:80 and R. 4:81, all papers shall be filed with the Surrogate of the county of venue as the Deputy Clerk of the Superior Court, Chancery Division, Probate Part, pursuant to R. 1:5-6.
Thus, pursuant to this rule, the case must be venued in the court where the administrator is appointed, and renders moot any further involvement by the Essex County courts in this matter.
The matter was, accordingly, by order dated March 26, 1997, transmitted to the Probate Part in Union County, the venue for the probate of the decedent's estate. Plaintiff's motion for reconsideration was denied on June 25, 1997. Our order denying plaintiff's motion for leave to appeal was entered on August 7, 1997.
Defendant's motion for summary judgment was heard on an adjourned return date, May 28, 1998. The trial court's reasons for granting the motion were set out in a letter opinion dated June 30, 1998. The court began with a recital of "undisputed" facts:
Arthur A. Roccamonte, (Decedent) was a sophisticated business person. Decedent was married to Elise Roccamonte (Elise) until his death on March 14, 1995. Decedent was survived by Elise and his two children, Doreen Stackman (Doreen) and Arthur Roccamonte, Jr. (Arthur Jr.). Decedent died intestate and Doreen was granted ... letters of administration.
The present issue arises from the fact that although Decedent was married, he lived and maintained a relationship with Mary [Plaintiff] for approximately the last thirty years of his life. Decedent lived with Mary in a co-op apartment in Glen Ridge, New Jersey[,] which Decedent purchased for $15,000 in 1973. At the start of their relationship, Mary was also married but soon thereafter obtained a divorce. Decedent, however, remained married. Decedent told Mary that he could not marry her because Elise would not divorce him for reasons having to do with the family business. Although Decedent remained married, Mary states that Decedent repeatedly told her personally and in the presence of others that "I will take care of you" or "you will be taken care of" for the rest of your life. According to Mary, Decedent lavishly supported her and her daughter, Sandra Sopko, during the entire relationship. In return, Mary states that she provided services consistent with that of a housewife. Mary states that the statements became more frequent during the past ten years in which Decedent suffered from throat cancer.
As proof of Decedent's intent to "take care of" Mary, Mary states that Decedent bought her a wedding band and an engagement ring. Furthermore, Decedent published a notice in the New York Times on March 28, 1968[,] stating that he will not be responsible for Elise's *617 debts. However, the Estate offers documents that show that Decedent filed his tax returns jointly with Elise until his death. Furthermore, both parties offer bits and pieces of the transcript of Mr. Neil Peters, Decedent's accountant (Peters), who testified that Decedent was aware that he did not have a will and when it was recommended several times by Peters to make one, he would just avoid doing anything about it.
At Decedent's death, he left Mary the co-op apartment, an insurance policy worth $10,000, a certificate of deposit worth $18,000, jewelry approximately worth $25,000, and other personal items bought by Decedent for Mary.
Applying the standards of Brill v. Guardian Life Ins. Co., 142 N.J. 520, 530, 540, 666 A.2d 146 (1995), the trial court first "determine[d] whether the alleged oral support agreement is testamentary in nature as to invoke the requirements under the Statute of Wills." It observed:
Under N.J.S.A. [] 3B:3-2, the requirements are that:
every will shall be in writing, signed by the testator or in his name by some other person in his presence and at his direction, and shall be signed by at least two persons each of whom witnessed either the signing or the testator's acknowledgment of the signature or of the will.
The reasoning behind the requirements for testamentary agreements is [ ] to provide "safeguards [ ... ] [r]igorously thrown about [ ] the testamentary act in order to forestall frauds by the living upon the dead." In re Taylor, 28 N.J.Super. 220, [225-26, 100 A.2d 346] (App.Div.1953). To determine whether the agreement the Decedent made with Mary is testamentary or whether it is a contract, it has been held that:
["]A contract operates immediately to create a property interest in the premises while a will is revocable, or, more properly speaking, inoperative or ambulatory until the death of the testator, at which time it operates to create a property interest in the beneficiary.[" * * *] The undertaking of a party under a contract is made in consideration of something to be paid or done by or on behalf of the other party, so that the obligation to and the right to require performance are reciprocal. A contract creates a present, enforceable and binding right over which the promisor has no control without the consent of the promisee, while a testamentary disposition operates prospectively.
[Michaels v. Donato, 4 N.J.Super. 570, 573, 67 A.2d 911 (Ch.Div.1949) (citations omitted); See United States Trust Co. v. Giveans, 97 N.J.L. 265, 117 A. 46 (1922).]
The letter opinion went on:
The Court finds that the above stated words of Decedent are testamentary in nature and thereby require the invocation of the Statute of Wills. The said words clearly show that Decedent's intent was prospective. Throughout his life with Mary, it is undisputed that he provided for her. The submitted testimony seen in a light most favorable to Mary shows that Decedent's uttered words were responses to questions that ask, "Whatever is going to happen to Mary if something happens to you." The said words became more frequently spoken during those years in which Decedent suffered from throat cancer.
Furthermore, Peters testified that he repeatedly recommended to Decedent to make a will and get his affairs in order. Decedent avoided ... doing so. Decedent did, however, leave Mary the co-op apartment and various financial documents and personal items. It is undisputed that Decedent was a sophisticated business person as noted above and it is fair to assume that he knew what he was doing. The facts surrounding the circumstances to which Decedent spoke these words lead the Court to conclude that Decedent's verbal statements *618 were testamentary in nature. Since they were never set forth in any written instrument, they do not satisfy the Statute of Wills and summary judgment is therefore proper.
The trial court then turned to the question "whether the said statement can be seen as a contract to make a will[,]", and opined:
The law governing contracts to make a will is N.J.S.A. [] 3B:1-4, and it states:
A contract to make a will or devise, or not to revoke a will or devise, or to die intestate, if executed after September 1, 1978, can be established only by (1) provisions of a will stating material provisions of the contract; (2) an express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or (3) a writing signed by the decedent evidencing the contract. The execution of a joint will or mutual wills does not create a presumption of a contract not to revoke the will or wills.
Assuming the said statements are a contract to make a will, it is clear upon a reading of the statute and the undisputed facts that the said statements do not satisfy the statutory requirements of a contract to make a will. However, considering the facts in a light most favorable to Mary, she indicates that the Decedent made the statements on various occasions some of which were made prior to 1962 [sic]. In this case, the Court must look to the law prior to the statute supra. As to oral agreements prior to 1978:
The obligation of [ ] plaintiff was to prove by clear, cogent, and convincing evidence an oral agreement on the part of the [d]ecedent, [ ] supported by [a] valuable consideration, and to prove that the agreement was mutual, definite, and certain as to its terms and subject matter. [* * *] It is only when these requirements are met that the plaintiff is entitled to specific performance of an oral agreement to bequeath and devise an estate.
[Young v. Sabol, 4 N.J. 309, 312, 72 A.2d 846 (1950); Cf. N.J.S.A. [] 2A:81-2]
The Court finds that Mary does not satisfy her burden that there was a contract to make a will. The words "I will take care of you" or "you will be taken care of," which is the entire alleged contract itself, does not show any definite and certain terms to a contract. Moreover, Mary does not offer any other evidence outside the said words to show otherwise. Furthermore, Mary does not clearly and convincingly prove that the agreement was mutually assented to or that valuable consideration was given. Mary does not offer any evidence that Decedent was to give her more than the non-probate items she received to show that Decedent and herself mutually agreed to a certain amount. Decedent already lavishly provided for Mary until his death in return for her services as a housewife. When the said statements were made, Mary offered no evidence of any further consideration. Therefore, whether the statements were made before or after 1978 is inconsequential because as a matter of law, Mary does not satisfy the requirements to show that Decedent contracted to make a will.
The order memorializing this decision was entered on July 9, 1998.
We have concluded that the matter was not suitable for resolution on summary judgment. With regard to the issues which the Union County motion judge addressed, there were genuine issues of material fact in respect of which plaintiff was entitled to a plenary proof opportunity before the matter could appropriately be resolved. See Brill, supra, 142 N.J. at 540, 666 A.2d 146.
The issue whether the purported agreement was testamentary in nature was fact sensitive. The underlying question of the decedent's intent at the times the alleged representations were made, i.e., whether *619 present (to bestow a deferred benefit as compensation for the rendition of past, current and future services) or prospective, could not be resolved without evaluating the testimony of knowledgeable individuals, and assessing the circumstances in the light of all the evidence bearing upon the issue. Likewise, whether the parties to any agreement that might be found to have existed intended what decedent gave to plaintiff during his lifetime to be full compensation for all the services she had and was to render, also involved issues of fact that could not be resolved on summary judgment. In sum, the trial court's conclusion "that Decedent's verbal statements were testamentary in nature" was a question too heavily impacted by details of fact to be amenable to summary judgment resolution. Ibid.
Finally as to this issue, we question the trial court's application of a principle of law which informed its decision, that "[a] contract creates a present, enforceable and binding right over which the promisor has no control without the consent of the promisee, while a testamentary disposition operates prospectively." Michaels v. Donato, 4 N.J.Super. 570, 573, 67 A.2d 911 (Ch.Div.1949). While this rubric is unquestionably valid as an approach, its application with the inflexibility suggested by the trial court would negate the rule that a contracting party may be held liable for promised consideration upon the rendition of contemplated future services as long as those services are, in fact, provided, i.e., a conditional promise. See, e.g., City of Camden v. South Jersey Port Comm'n, 2 N.J.Super. 278, 302, 63 A.2d 552 (Ch.Div. 1948), aff'd, 4 N.J. 357, 73 A.2d 55 (1950); Restatement (Second) of Contracts, § 45 (1981) (option contract). See also Prince George's County v. Brown, 348 Md. 708, 705 A.2d 1158, 1161 (1998) (quoting 3 Williston on Contracts § 7:18 at 346-47 (R.A. Lord ed., 4th ed. 1992) (quoting Gutlon v. Marcus, 165 Mass. 335, 43 N.E. 125, 125 (1896))).
The issue whether there was a contract to make a will was, similarly, too fact sensitive to permit resolution on the motion record. Assuming for the purposes of this opinion that the trial court was correct to apply pre-1978 standards to the resolution of that issue, at least as to commitments of the decedent which plaintiff could establish were made before the effective date of the amendment to N.J.S.A. 3A:2A-19, the predecessor of N.J.S.A. 3B:1-4, the motion record provided no adequate basis for the judge's conclusions that plaintiff could not prove, clearly and convincingly, that the purported agreement between her and the decedent "was supported by a valuable consideration, and ... was mutual, definite, and certain as to its terms and subject matter." Young v. Sabol, 4 N.J. 309, 312, 72 A.2d 846 (1950).
Apart from the foregoing considerations, and most significantly, we are impelled to vacate the grant of summary judgment because the trial court gave no consideration at all to an independent ground for the relief sought, the main point urged by plaintiff. It is that, on the basis of principles established in Kozlowski v. Kozlowski, 80 N.J. 378, 403 A.2d 902 (1979); see also Crowe v. DeGioia, 90 N.J. 126, 447 A.2d 173 (1982), she had a valid and enforceable contract claim with independent vitality, assertable against the decedent's estate as his successor in interest, apart from any testamentary qualities decedent's representations might have had or whether they could be viewed as satisfying the requirements for a contract to make a will. This is a critical, and central, question bearing upon plaintiff's claim of entitlement.
On the issue of venue, the motion judge in the Essex County Probate Part was manifestly correct in applying the penultimate provision of R. 4:3-1(b), "[a]ctions transferred shall not be retransferred[,]" as a mandatory preclusion of divisional retransfer by a trial court. Another reason to reach the same conclusion is provided by plaintiff's earlier motion advocating transfer from the Family Part *620 to the Probate Part. Principles of judicial estoppel bar any later motion to the contrary. See State (Div. of Gaming Enforcement) v. Gonzalez, 142 N.J. 618, 632, 667 A.2d 684 (1995). Cf. State ex rel. Wm. Eckelmann, Inc. v. Jones, 4 N.J. 374, 382-83, 72 A.2d 872 (1950) (precluding a venue challenge on appeal after a trial had been conducted and judgment entered without any objection to the venue). Thus the denial of retransfer is an appropriate result even if the Family Part order transferring the matter was incorrect at the time it was entered. See Pressler, Current N.J. Court Rules, comment 1 on R. 5:1-2 (1999 ed.).
On another hand, the Essex County Probate Part's order transferring the matter to the Probate Part in Union County because of estate venue considerations is directly before us. Although the circumstances of this case provide good arguments on both sides of the divisional venue issue, we do not question the validity of the discretionary determinationonce divisional retransfer was precluded and the Probate Part of the Chancery Division would consequently retain the caseordering the matter to be tried in the county in which, as a matter of fact, the decedent's estate was docketed for probate. See R. 4:83-2.
Accordingly, we affirm in part, and reverse in part. The interlocutory order based upon a ruling denying retransfer to the Family Part and providing for transfer to the Probate Part in Union County is affirmed. The final order granting defendant's motion for summary judgment is reversed and vacated. The matter is remanded to the Chancery Division, Probate Part, Union County for such proceedings as may be required to conclude the matter.