835 A.2d 656

**Ronnie E. CHEEK**

v.

**UNITED HEALTHCARE OF the MID–ATLANTIC, INC.**

**No. 141, Sept. Term, 2002.**

Court of Appeals of Maryland.

Nov. 13, 2003.

Barton D. Moorstein (Blank & Moorstein, L.L.P., on brief), Rockville, for Appellant.

Kelly S. Jennings (Susan C. Benner of Seyfarth Shaw, on brief), Washington, DC, for Appellees.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BATTAGLIA, Judge.

The issue in this case is whether a valid and enforceable arbitration agreement exists between an employer and an

employee when the employer has reserved the right to, within its sole discretion, alter, amend, modify, or revoke the arbitration agreement at any time and without notice, even though it has not exercised that option in the present case.

Appellant, Ronnie E. Cheek, filed suit in the Circuit Court for Baltimore City for breach of contract and related causes of action after his employer, appellee United Healthcare of the Mid–Atlantic, Inc.,[1] terminated his employment. United responded with a motion to compel arbitration, which the Circuit Court granted. Cheek appealed, and we granted *certiorari* prior to any proceedings in the Court of Special Appeals. For the reasons discussed herein, we conclude that the arbitration agreement between Cheek and United is unenforceable for lack of consideration because United's promise to arbitrate is illusory and because United's employment of Cheek cannot serve as consideration for the arbitration agreement. Consequently, we shall reverse the order of the Circuit Court compelling arbitration and remand this case for further proceedings.

## I. BACKGROUND

On November 17, 2000, United orally offered Cheek a position of employment as a senior sales executive, which was confirmed in writing the same day. The two-page letter set forth various conditions of United's offer of employment, including that Cheek accept United's "Employment Arbitration Policy." Specifically, the letter stated that enclosed with it were "summaries of the United Group Internal Dispute and Employment Arbitration Policy which are conditions of your employment." [2]

---

1. According to appellees, on March 6, 2000, United merged into UnitedHealth Group, Inc. Cheek named both companies as defendants in the present case, and we shall refer to them collectively as "United."

2. Cheek claims that "[n]o detail of the arbitration policy" was included with United's November 17 letter. The trial court made no finding on this point.

In a November 28, 2000, letter to United, Cheek wrote that he was "delighted to accept United Healthcare's generous offer" and that "[a]ll of the terms in your employment letter are amenable to me." He also indicated that he had submitted his resignation that morning to his current employer, Blue Cross/Blue Shield of the District of Columbia.

On January 2, 2001, during Cheek's first day of employment with United, he received a copy of United's Employee Handbook, which contained summaries of United's Internal Dispute Resolution Policy and Employment Arbitration Policy (hereinafter, "Arbitration Policy" or "Policy").[3] The summary of the Arbitration Policy described the scope of the Policy, the rules applicable in arbitration, how an employee initiates arbitration, and the types of relief available in arbitration. Specifically, the summary of the Policy stated that United "believes that the resolution of disagreements" between employees and United "are best accomplished by an internal dispute review (IDR) and, where that fails, by arbitration based on the rules of the American Arbitration Association." Accordingly, United declared in the summary of the Policy that arbitration "is the final, exclusive and required forum for the resolution of all employment related disputes which are based on a legal claim" and that "any party to [such a dispute] may initiate the arbitration process." Particularly relevant to the disposition of this appeal, the summary of the Arbitration Policy also provided:

United HealthCare reserves the right to alter, amend, modify, or revoke the Policy at its sole and absolute discretion at

---

**3.** The summary of the Arbitration Policy "provides general information regarding the Arbitration Policy," and states that "[i]n the event of a conflict between [the] Summary and the Policy, the terms of the Policy shall govern in all cases." A copy of the full Arbitration Policy has not been provided in the record extract or in the record. Neither of the parties to this appeal, however, has alleged that any relevant conflicts exist between the summary and the full Arbitration Policy. We also note that in an "Acknowledgement Form for the Code of Conduct and Employment Handbook," signed by Cheek, he represented that at the time he "received the Handbook" he had "specifically received and reviewed the policies referenced below ... Internal Dispute Resolution/Employment Arbitration Policy."

any time with or without notice. The senior executive of Human Resources has the sole authority to alter, amend, modify, or revoke the Policy.

On January 2, 2001, Cheek signed an "Acknowledgment Form for the Code of Conduct and Employment Handbook." In that Form, Cheek acknowledged that he had "specifically received and reviewed," among other things, an "Internal Dispute Resolution/Employment Arbitration Policy." The Form that Cheek signed also stated:

I understand that UnitedHealth Group Employment Arbitration Policy is a binding contract between UnitedHealth Group and me to resolve all employment-related disputes which are based on a legal claim through final and binding arbitration. I agree to submit all employment-related disputes based on legal claim[sic] to arbitration under United-Health Group's policy.

Within seven months, on July 27, 2001, United informed Cheek that United was eliminating his position as of August 10, 2001, when, in fact, his employment was terminated. In response, on December 31, 2001, Cheek filed a four-count complaint against United in the Circuit Court for Baltimore City. In the complaint, Cheek sought damages for breach of contract, negligent misrepresentation, and violations of Maryland Code, § 3–501 et. seq. of the Labor and Employment Article.[4] Cheek also claimed under the doctrine of promissory estoppel that United should have been precluded from denying the existence of a valid employment agreement.

On February 6, 2002, United filed a "Motion to Dismiss and/or Compel Arbitration and Stay Lawsuit" with the Circuit Court. On May 15, 2002, after hearing from the parties, the Circuit Court entered an order dismissing Cheek's complaint and ordering him to submit his claims to arbitration. Thereafter, Cheek noted an appeal to the Court of Special Appeals. We issued a writ of certiorari, *Cheek v. United Healthcare*,

---

4. Maryland Code, § 3–501 et seq. of the Labor and Employment Article (1991, 1999 Repl. Vol.).

374 Md. 81, 821 A.2d 369 (2003), prior to any proceedings in the Court of Special Appeals.

Cheek presents the following questions for review, which we have restructured:

(I) Whether the arbitration agreement between Cheek and United is "unenforceable and void as against public policy" because:

    (A) The rules of the arbitration can be altered, revised, or amended at the sole discretion of United;

    (B) The arbitration agreement does not allow the arbitrator to conclude that an employee is anything other than an "employee at will;"

    (C) The arbitration agreement was "foisted" on Cheek after an employment contract was formed.

(II) Whether United's "sole and absolute discretion" to "alter, amend, modify, or revoke" its arbitration agreement with Cheek at any time renders its promise to arbitrate illusory and the arbitration agreement, therefore, unenforceable.

For the reasons discussed herein, we conclude that the arbitration agreement in the present case is unenforceable for lack of consideration because United's promise to arbitrate is illusory and United's employment of Cheek did not act as consideration for the arbitration agreement. Consequently, we need not address Cheek's remaining questions.

## II. DISCUSSION

Cheek contends that the Circuit Court erred in compelling arbitration and advances several arguments in support of that contention. Cheek claims that the Arbitration Policy "lacks mutuality" and is also "void as against public policy" because it states that United has "the right to alter, amend, modify, or revoke the Policy at its sole and absolute discretion at any time with or without notice." Additionally, Cheek argues that the Arbitration Policy "lacks consideration." In support of that claim, Cheek asserts that he agreed to the Arbitration

Policy after he had already entered into a binding oral contract of employment with United. Consequently, Cheek asserts that he "received nothing that he had not already [received]." Cheek further claims that the Arbitration Policy is one of "adhesion" and that he was acting under "duress" when he signed it because he was in an inferior bargaining position, because the arbitration agreement precludes an arbitrator from finding anything other than at-will employment, and because the agreement was offered to him on a "take it or leave it" basis after he had already given up his position at Blue Cross/Blue Shield of the District of Columbia. Finally, Cheek contends that the Arbitration Policy is unenforceable because United's promise to arbitrate is "illusory." In support of that contention, Cheek relies on *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306 (6th Cir.2000), in which the United States Court of Appeals for the Sixth Circuit held, according to Cheek, that a "substantially similar arbitration scheme was [illusory and therefore] unenforceable."

United, on the other hand, contends that it and Cheek "entered into a valid and enforceable arbitration agreement." Contrary to Cheek's assertion, United claims that the Arbitration Policy is supported by "mutuality of obligation" because United "promised to provide Cheek employment for, *inter alia*, Cheek's promise to abide by the terms of the [arbitration agreement]," and because it promised to submit to arbitration "all employment related disputes which are based on a legal claim." That United reserved the right to modify the Arbitration Policy, it asserts, "is of no consequence to the issue of mutuality." United also claims that the Arbitration Policy was supported by "adequate consideration." In support of that claim, United rejects Cheek's assertion that the Arbitration Policy was entered into after his employment commenced, and further argues that the "mutual promise to arbitrate" and United's "continued employment" of Cheek each served as adequate consideration to support the Arbitration Policy. Additionally, United argues that the Arbitration Policy is not a contract of adhesion because it is a "simple" four-page document, because there is no evidence of any "great disparity in

bargaining power between the parties," and because the Arbitration Policy does not preclude an arbitrator from finding an employment contract. Finally, United asserts that a promise is not illusory "simply because it permits one party to unilaterally modify [an] agreement without notice," and that its right to modify the Arbitration Policy, therefore, does not "destroy [its] promise to arbitrate Cheek's dispute."

■ We have described arbitration as "the process whereby parties voluntarily agree to substitute a private tribunal for the public tribunal otherwise available to them." *Gold Coast Mall, Inc. v. Larmar Corp.,* 298 Md. 96, 103, 468 A.2d 91, 95 (1983); *see also Charles J. Frank, Inc. v. Associated Jewish Charities of Baltimore, Inc.,* 294 Md. 443, 448, 450 A.2d 1304, 1306 (1982). The Maryland Uniform Arbitration Act (hereinafter, "Arbitration Act"), found in Maryland Code, §§ 3–201 through 3–234 of the Courts and Judicial Proceedings Article (1974, 2002 Repl. Vol.), "expresses the legislative policy favoring enforcement of agreements to arbitrate." *Allstate Ins. Co. v. Stinebaugh,* 374 Md. 631, 641, 824 A.2d 87, 93(203). *See also Holmes v. Coverall North America, Inc.,* 336 Md. 534, 546, 649 A.2d 365, 371 (1994) (observing that the Arbitration Act embodies "the legislative intent to favor arbitration"); *Crown Oil & Wax Co. of Delaware, Inc. v. Glen Constr. Co. of Virginia, Inc.,* 320 Md. 546, 558, 578 A.2d 1184, 1189 (1990)("Maryland courts have consistently stated that the [Arbitration Act] embodies a legislative policy favoring the enforcement of executory agreements to arbitrate."); *Gold Coast Mall, Inc.,* 298 Md. at 103, 468 A.2d at 95; *Charles J. Frank, Inc.,* 294 Md. at 448, 450 A.2d at 1306.

Section 3–206(a) of the Arbitration Act provides that:

A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy arising between the parties in the future is valid and enforceable, and is irrevocable, except upon grounds that exist at law or in equity for the revocation of a contract.

Section 3–207 allows parties to petition a court to compel arbitration and states:

(a) *Refusal to arbitrate.*—If a party to an arbitration agreement described in § 3–202 refuses to arbitrate, the other party may file a petition with a court to order arbitration.

(b) *Denial of existence of arbitration agreement.*—If the opposing party denies existence of an arbitration agreement, the court shall proceed expeditiously to determine if the agreement exists.

(c) *Determination by court.*—If the court determines that the agreement exists, it shall order arbitration. Otherwise it shall deny the petition.

The determination of whether there is an agreement to arbitrate, of course, depends on contract principles since arbitration is a matter of contract. As such, "a party cannot be required to submit any dispute to arbitration that it has not agreed to submit." *Curtis G. Testerman Co. v. Buck,* 340 Md. 569, 579, 667 A.2d 649, 654 (1995)(recognizing that "[a]rbitration is 'consensual; a creature of contract' " and that " '[i]n the absence of an express arbitration agreement, no party may be compelled to submit to arbitration in contravention of its right to legal process' ") (quoting Thomas J. Stipanowich, *Arbitration and the Multiparty Dispute: The Search for Workable Solutions,* 72 Iowa L.Rev. 473, 476 (1987) (citations omitted)). *See also Messersmith, Inc. v. Barclay Townhouse Associates,* 313 Md. 652, 658, 547 A.2d 1048, 1051 (1988)(recognizing that " 'a valid arbitration agreement must exist for arbitration to be binding' ") (quoting *Arrow Overall Supply Co. v. Peloquin Enterprises,* 414 Mich. 95, 97, 323 N.W.2d 1, 2 (1982)).

To be binding and enforceable, contracts ordinarily require consideration. *Harford County v. Town of Bel Air,* 348 Md. 363, 381–82, 704 A.2d 421, 430 (1998)(citing *Beall v. Beall,* 291 Md. 224, 229, 434 A.2d 1015, 1018 (1981)); *Broaddus v. First Nat. Bank,* 161 Md. 116, 121, 155 A. 309, 311 (1931). *See also Chernick v. Chernick,* 327 Md. 470, 479, 610 A.2d 770, 774 (1992)(binding contracts "must be supported by consideration"); *Peer v. First Federal Savings and Loan*

*Assoc. of Cumberland,* 273 Md. 610, 614, 331 A.2d 299, 301 (1975)(a binding contract "must be supported by sufficient consideration"). In Maryland, consideration may be established by showing " 'a benefit to the promisor or a detriment to the promisee.' " *Harford County,* 348 Md. at 382, 704 A.2d at 430 (quoting *Vogelhut v. Kandel,* 308 Md. 183, 191, 517 A.2d 1092, 1096 (1986)). In particular, we have recognized that the "[f]orebearance to exercise a right or pursue a claim," can "constitute[ ] sufficient consideration to support .[an] ... agreement." *Chernick,* 327 Md. at 480, 610 A.2d at 774 (citing *Erie Ins. Exch. v. Calvert Fire Ins.,* 253 Md. 385, 389, 252 A.2d 840, 842 (1969)); *Beall,* 291 Md. at 230, 434 A.2d at 1019 ("forbearance to exercise a legal right is sufficient consideration to support a promise.").

■ A promise becomes consideration for another promise only when it constitutes a binding obligation. Without a binding obligation, sufficient consideration does not exist to support a legally enforceable agreement. *See Tyler v. Capitol Indemnity Ins. Co.,* 206 Md. 129, 134, 110 A.2d 528, 530 (1955)(recognizing that " 'If [an] option goes so far as to render illusory the promise of the party given the option, there is indeed no sufficient consideration, and therefore no contract ....' ")(quoting 1 *Williston on Contracts,* Sec. 141 (Rev. Ed.)). *See also* Restatement of Contracts 2d § 77 cmt. a (1981)("Where the apparent assurance of performance is illusory, it is not consideration for a return promise."); 2 Arthur L. Corbin, Corbin on Contracts § 5.28 (2003)(explaining that "an illusory promise is neither enforceable against the one making it, nor is it operative as a consideration for a return promise," and that "if there is no other consideration for a return promise, the result is that no contract is created.").

An "illusory promise" appears to be a promise, but it does not actually bind or obligate the promisor to anything. An illusory promise is composed of "words in a promissory form that promise nothing." Corbin on Contracts § 5.28 (2003). "They do not purport to put any limitation on the freedom of

the alleged promisor. If A makes an illusory promise, A's words leave A's future action subject to A's own future whim, just as it would have been had A said nothing at all." *Id.* Similarly, the Restatement of Contracts explains that "[w]ords of promise which by their terms make performance entirely optional with the 'promisor' whatever may happen, or whatever course of conduct in other respects he may pursue, do not constitute a promise." Restatement of Contracts 2d § 2 cmt. e. Likewise, "the promise is too indefinite for legal enforcement is the promise where the promisor retains an unlimited right to decide later the nature or extent of his performance. The unlimited choice in effect destroys the promise and makes it merely illusory." 1 Samuel Williston, Contracts, § 4:24 (4th Ed. 1990).

██ United initiated the arbitration with Cheek; it has not revoked nor in any way altered the Arbitration Policy with Cheek at any time. Nonetheless, the fact that "United HealthCare reserves the right to alter, amend, modify, or revoke the [Arbitration] Policy at its sole and absolute discretion at any time with or without notice" creates no real promise, and therefore, insufficient consideration to support an enforceable agreement to arbitrate. Indeed, the plain and unambiguous language of the clause appears to allow United to revoke the Employment Arbitration Policy even after arbitration is invoked, and even after a decision is rendered, because United can "revoke" the Policy "at any time." [5] Thus, we conclude that United's "promise" to arbitrate employment disputes is entirely illusory, and therefore, no real promise at all.

---

**5.** At argument, counsel for United stated that United would not revoke the Arbitration Policy in the present case. That oral representation is not sufficient to alter the terms of Arbitration Policy which was presented to Cheek. *See Phox v. Atriums Management Co., Inc.,* 230 F.Supp.2d 1279, 1283 (D.Kan.2002)(rejecting defendant's claim that because it did not exercise its right to cancel arbitration agreement, its promise to arbitrate constituted consideration; explaining that "Defendant's after-the-fact decision not to exercise [its right to unilaterally cancel the arbitration agreement] does not alter the illusory nature of its original promise to arbitrate").

In so concluding, we align ourselves with courts from other jurisdictions that have found similar language to be illusory. In *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306 (6th Cir.2000), the United States Court of Appeals for the Sixth Circuit was called upon to interpret an arbitration agreement between the appellants and a third-party arbitration service provider, Employment Dispute Services, Inc. (hereinafter, "EDSI"), which the appellants were required to enter into in order to be considered for employment by Ryan's Family Steak Houses. *Id.* at 309. In the agreement, EDSI agreed to provide a forum for arbitration, but reserved the right to alter the applicable rules and procedures of arbitration without any notification to or consent from the appellants. *Id.* at 310.

The Sixth Circuit concluded that the agreement was unenforceable because there was no "mutuality of obligation" and therefore, no consideration. *Id.* at 316. In so concluding, the Court reasoned that EDSI's promise to provide an arbitration forum was "illusory" because EDSI had "reserved the right to alter the applicable rules and procedures without any obligation to notify, much less receive consent from" the appellants. *Id.* at 315–16. The Court explained that "an illusory promise arises when a promisor retains the right to decide whether or not to perform the promised act" and that "[a] promise is also illusory when its indefinite nature defies legal enforcement." *Id.* at 315. *See also Penn v. Ryan's Family Steak Houses, Inc.*, 269 F.3d 753, 759, 761 (7th Cir.2001) (construing a similar agreement where EDSI had sole, unilateral right to amend arbitration rules; holding that EDSI's promise was illusory, and that the arbitration agreement, therefore, was unenforceable).

Similarly, in the case before us, United has the right to "alter, amend, modify, or revoke the [Employment Arbitration] Policy at its sole and absolute discretion at any time with or without notice" and without consent. United, however, claims that *Floss* is distinguishable because the Employee Arbitration Policy at issue in the present case, unlike the agreement in *Floss*, does not allow United to modify the rules

of arbitration, which are based on those of the American Arbitration Association. Additionally, United highlights criticism of the *Floss* decision incorporated in Corbin on Contracts:

> If EDSI modified the rules and procedures of its arbitral tribunals in such a way that the resulting rules and procedures continued to resemble something we might recognize as 'arbitration,' then EDSI's modification fell within the promise to arbitrate, and EDSI would still be doing what it promised ... it would do: arbitrate their disputes with Ryan's.

Corbin on Contracts § 5.28 (2003 Supp). Even Corbin on Contracts, however, recognizes that "[t]here might be disputes at the margins," in which a finding of an illusory promise would be appropriate. *Id.* Certainly, the ability to completely revoke an arbitration policy unilaterally, at any time, even after invocation and decision, and without notice to or consent from the employee, is at that margin.

The United States Court of Appeals for the Tenth Circuit also has found language similar to the language at hand to be illusory. In *Dumais v. American Golf Corp.*, 299 F.3d 1216 (2002), Dumais, the employee, signed a "New Co–Worker Authorization & Acknowledgment Form" that bound her to the provisions of American Golf Corporation's employee handbook, which included an arbitration provision. *Id.* at 1217. A provision of the handbook stated that American Golf "reserves the right to at any time change, delete, modify, or add to any of the provisions contained in this handbook at its sole discretion" with the exception of the arbitration provision. *Id.* Another provision stated that American Golf had the right to amend, supplement, or revise everything in the handbook, and this provision did not exclude the arbitration provision. *Id.*

The Tenth Circuit affirmed the judgment of the Federal District Court for the District of New Mexico denying American Golf's motion to compel arbitration. *Id.* at 1220. The Court reasoned that the conflicting sections of the employee handbook created an ambiguity that should be construed

against American Golf. *Id.* at 1219. Accordingly, the Court found that American Golf had the ability to "change, delete, modify, or add" to the arbitration provision at any time, which rendered "the alleged agreement between American Golf and [Dumais] to arbitrate their employment disputes illusory." *Id.* at 1220. *See also Phox,* 230 F.Supp.2d at 1282 (holding employer's promise to arbitrate "illusory" because employer reserved "the right to modify or cancel the provisions" of an employee handbook, including an arbitration clause, "at its sole discretion"); *Gourley v. Yellow Transportation, LLC,* 178 F.Supp.2d 1196, 1202 (D.Colo.2001)(determining that an arbitration agreement between employer and employees was "illusory" because employer withheld "the power to interpret, modify, rescind, or supplement its terms unilaterally").

United, however, claims that there is another source of consideration to support the Arbitration Policy. According to United, its "employment or continued employment of Cheek constituted sufficient consideration for the agreement to arbitrate." United asserts that, by providing Cheek with a job, it has given sufficient consideration for Cheek's promise to arbitrate employment disputes, so that United's promise is not illusory. To agree with United would place this Court in the untenable position of having to go beyond the confines of the arbitration agreement itself and into an analysis of the validity of the larger contract, an inquiry which we cannot make. Moreover, we always would have to find that consideration exists to support an arbitration agreement in situations in which performance of the contract has occurred. We explain.

■ Maryland's Arbitration Act "expresses the legislative policy favoring enforcement of agreements to arbitrate." *Allstate Ins. Co.,* 374 Md. at 641, 824 A.2d at 93. The Arbitration Act expresses this policy by "strictly confin[ing] the function of the court in suits to compel arbitration to the resolution of a single issue-is there an agreement to arbitrate the subject matter of a particular dispute." *Gold Coast Mall,* 298 Md. at 103–04, 468 A.2d at 95; *Holmes,* 336 Md. at 546, 649 A.2d at 371 (1994) ("The narrow scope of the court's involvement [in a

petition to compel, or stay, arbitration] follows from our recognition of the legislative intent to favor arbitration."); *Crown Oil & Wax Co.*, 320 Md. at 557–58, 578 A.2d at 1189 (stating that a court is prohibited under Section 3–210 of the Arbitration Act from inquiring into the merits of a claim).

In order to observe this mandate, we have followed the lead of the Supreme Court in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), by considering an arbitration clause of a larger contract to be severable therefrom. In *Holmes*, we were called upon to determine "whether allegations of fraudulent inducement and violations of the Franchise Act in a franchise agreement containing a broad arbitration clause are sufficient to permit the franchisee to avoid arbitration of a dispute." *Holmes*, 336 Md. at 541, 649 A.2d at 368. We recognized that the Supreme Court in *Prima Paint, supra*, in considering the same issue, reviewed the policies of the Federal Arbitration Act favoring the enforcement of arbitration agreements, and determined that "where a party opposed a motion for arbitration based on allegations that there was fraud in the inducement of the entire contract, the issue is one for an arbitrator, not a court." *Id.* at 541–42, 649 A.2d at 368. The "reasoning behind *Prima Paint*," we noted, "is that the arbitration clause is a severable part of the contract." *Id.* at 543, 649 A.2d at 369. We then recognized that Maryland's Arbitration Act is the "State analogue" to the Federal Arbitration Act, because both embody a policy of enforcing valid arbitration agreements. *Id.* at 541, 649 A.2d at 368. Reviewing additional federal and state case law, we observed that mutual promises to arbitrate act as "an independently enforceable contract." *Id.* at 544, 649 A.2d at 370. In an enforceable arbitration agreement, we explained, each party has promised to arbitrate disputes arising from an underlying contract, and "each promise provides consideration for the other." *Id.* Thus, in a motion to compel arbitration, a court must determine whether "there is a mutual exchange of promises to arbitrate," and "[o]nce a court determines that the making of the agreement to arbitrate is not in dispute, its inquiry ceases, as the

agreement to arbitrate has been established as a valid and enforceable contract." *Id.* at 544, 649 A.2d at 370.

United, however, invites us to disregard the narrow scope of our role by looking beyond the Arbitration Policy and into the underlying employment agreement to determine whether consideration exists to support an agreement to arbitrate. To accept United's assertion that its employment or continued employment of Cheek constituted consideration for the Arbitration Policy would require that we inquire into, and at least make an implicit determination about, the nature of the underlying employment agreement. Indeed, the merits of the underlying controversy in the present case call into question the type of employment relationship that existed between United and Cheek. In his complaint to the Circuit Court, Cheek claimed, among other things, damages for breach of contract, alleging that United "materially breached its contractual obligation to [Cheek] by failing to pay [Cheek] his base pay, incentive compensation, and other benefits." The November 17, 2000 letter memorializing United's offer of employment to Cheek, however, states that "you [Cheek] retain the right to terminate your employment with [United], at any time and for any reason, as does [United]." Similarly, the employee handbook states in part that its provisions, except for the Arbitration Policy, "do not establish a contract or any particular terms or conditions of employment between [Cheek] and [United]. None of the policies constitute or are intended to constitute a promise of employment." Given the language of the letter and the handbook, and the relief sought in the complaint, it is apparent that the parties disagree about whether the employment relationship between Cheek and United was "at will," in which case employment "may be legally terminated at the pleasure of either party at any time," or whether it imposed contractual employment obligations upon United. Therefore, were we to entertain United's assertion regarding Cheek's employment as consideration, we would be straying into the prohibited morass of the merits of the claims.

United, nonetheless, urges us to find employment as consideration, as the Court of Special Appeals did in *Simko, Inc. v. Graymar Co.*, 55 Md.App. 561, 464 A.2d 1104 (1983). *Simko*, however, is inapposite. In that case, the Court of Special Appeals concluded that continued employment of an at-will employee for a substantial period beyond the threat of discharge was sufficient consideration to support a post-employment covenant not to compete. *Id.* at 567, 464 A.2d at 1107–08. The present case involves an arbitration agreement, not a covenant not to compete. As previously discussed, in determining whether an arbitration agreement contained within a larger agreement is enforceable, courts are limited to determining only one thing: whether a valid arbitration agreement exists.

In concluding that United's employment or continued employment of Cheek does not act as consideration in return for Cheek's promise to arbitrate, we join at least two other state courts. In *The Money Place, LLC. v. Barnes*, 349 Ark. 411, 78 S.W.3d 714 (2002), the Supreme Court of Arkansas determined that an arbitration provision in The Money Place's Deferred Presentment Agreement was invalid. *Id.* at 715. The plaintiffs in *The Money Place* filed a class-action suit against that business, "alleging usury in its payday-loan/deferred-check presentment business." *Id.* In determining that the arbitration agreement was invalid, the Arkansas Supreme Court rejected The Money Place's claim that if the entire Deferred Presentment Agreement was supported by sufficient consideration, then the arbitration clause also was enforceable based upon the same consideration. *Id.* at 717. "To analyze the contract as The Money Place" suggested, the Court stated, would require it "to go to the merits of the underlying case," for if fees collected by The Money Place in its payday-loan/deferred-check presentment business were, "in reality, interest, and are usurious, then the contract [would have lacked] consideration." *Id.* The Court then stated that it was "follow[ing] the lead of the United States Supreme Court" in declining to address whether there was consideration for the

contract as a whole and in "limit[ing][its] inquiry into whether the arbitration provision of the contract ... is valid." *Id.*

In *Stevens/Leinweber/Sullens, Inc. v. Holm Development and Management, Inc.,* 165 Ariz. 25, 795 P.2d 1308 (Ct.App. 1990), the Court of Appeals of Arizona concluded that Holm, the owner of a construction project, could not " 'borrow' consideration from the principal contract to support an arbitration provision." *Id.* at 1313. An addendum to the construction contract granted Holm "the absolute option of selecting either arbitration or litigation as the means of dispute resolution" and also gave Holm "the right to reconsider its choice of dispute resolution 'at any time, prior to a final judgment in the ongoing proceeding.' " *Id.* In concluding that the arbitration provisions were void for lack of consideration, Arizona's intermediate appellate court reasoned that it could not look to consideration in the underlying contract because the arbitration provisions constituted a separable and independent agreement.

As support for its conclusion that the arbitration provisions were separable from the construction contract, the Arizona Court looked to two provisions of Arizona's arbitration act, which are similar to the Maryland Act, and the United States Supreme Court's decision in *Prima Paint, supra,* upon which we relied in *Holmes, supra.* Section 12–1502 of the Arizona Revised Statute, according to the Court, "restricts judicial review to a determination of whether a valid arbitration provision exists." *Id.* at 1311. That Section states:

> On application of a party showing [a valid agreement to arbitrate] and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party. Otherwise, the application shall be denied.

Section 12–1501, the Court stated, "sets forth the grounds upon which the validity of an arbitration provision may be challenged." *Id.* That Statute provides:

A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. (Emphasis omitted).

These two statutory provisions, when "[r]ead in conjunction," the Arizona Court declared, "embody the concept of separability endorsed by the United States Supreme Court in" *Prima Paint, supra. Id.* at 1312. Finally, the Court rejected Holm's contention that the arbitration provision should be considered separate from the underlying contract only when necessary to preserve an agreement to arbitrate, reasoning that nothing in the language of A.R.S. Section 12–1501 warranted such a result, and that the doctrine of separability was in fact "inherent in the language" of that Statute. *Id.*

We disagree with cases from other jurisdictions that determine that consideration for an underlying contract also can serve as consideration for an arbitration agreement within the contract, even when the arbitration agreement is drafted so that one party is absolutely bound to arbitrate all disputes, but the other party has the sole discretion to amend, modify, or completely revoking the arbitration agreement at any time and for any reason. Indeed, the cases of *Kelly v. UHC Mgmt. Co., Inc.*, 967 F.Supp. 1240 (N.D.Ala.1997), decided by the United States District Court for the Northern District of Alabama, Southern Division, and *McNaughton v. United Healthcare Servs., Inc.*, 728 So.2d 592 (Ala.1998), from the Supreme Court of Alabama, both involved the same disclaimer language of United's Arbitration Policy at issue in this case, namely, that United "reserves the right to alter, amend, modify, or revoke this policy at its sole and absolute discretion at any time with or without notice."

The Federal District Court held that United's ability "to alter, amend, modify, or revoke [the Arbitration Policy] at its sole and absolute discretion at any time with or without notice," did not render the Policy unenforceable for lack of consideration. *Kelly*, 967 F.Supp. at 1258. According to the

District Court, the plaintiffs in the case provided consideration by "their promise to arbitrate employment disputes," and United "gave consideration in continuing to employ the plaintiffs in exchange for their signing the arbitration agreements." *Id.* at 1260.

The Supreme Court of Alabama, in a five-to-four decision, relied in part on the Federal District Court's decision, in concluding that United's Arbitration Policy was a binding agreement. *McNaughton*, 728 So.2d at 595–96. The Court rejected McNaughton's contention that the arbitration agreement was unenforceable for lack of mutuality of obligation, as well as his argument that the language of the Arbitration Policy rendered it "void under the doctrine of unconscionability/mutuality of remedy." *Id.* at 596. The Alabama Court also concluded that "under clear Alabama contract law, United's providing at-will employment of McNaughton constituted sufficient consideration in exchange for McNaughton's agreement to arbitrate her employment disputes under United's arbitration policy." *Id.* at 595.[6]

---

**6.** We find persuasive the dissenting opinion in *McNaughton*, of Justice J. Cook. Justice Cook explained that an at-will employment contract existed separately from the Employment Arbitration Policy. *Id.* at 604. The Justice also explained that the at-will contract was unilateral in nature, because the promise to pay is accepted by the act of performing work, but that an arbitration agreement is a bilateral and executory contract, where the parties bargain for mutual promises, not performance. *Id.* (citing *Wagner v. City of Globe*, 150 Ariz. 82, 85, 722 P.2d 250, 253 (1986) ("Employment contracts, particularly those which would be considered at-will, are the best and most typical examples of *unilateral contracts*.")). Thus, she determined that there existed two separate agreements, each of which was of a different class; the at-will employment contract as unilateral, and the arbitration agreement as bilateral. The consideration for the unilateral at-will employment contract (the promise to pay), Justice Cook opined, could not serve as the consideration for the separate bilateral agreement to arbitrate, because the parties to such a bilateral agreement bargained for mutual promises to forgo their rights to go to court and resolve disputes in arbitration. She also criticized the majority's determination that because continued at-will employment is sufficient consideration for a non-competition agreement between an employer and an employee, it could likewise act as consideration for an arbitration agreement. According to Justice Cook, the majority's analogy was flawed because a non-competition agreement is a type of unilateral contract, but an arbitration agreement

Other cases, as well, have concluded that consideration from an underlying contract, or continued employment, can support an arbitration clause and render it enforceable. *See e.g. Blair v. Scott Specialty Gases*, 283 F.3d 595, 604 n. 3 (3rd Cir.2002) (noting in dicta that continued employment may serve as consideration for an agreement to arbitrate); *Barker v. Golf U.S.A., Inc.*, 154 F.3d 788, 792 (8th Cir.1998) (concluding that under Oklahoma law, "mutuality of obligation is not required for arbitration clauses so long as the contract as a whole is supported by consideration"); *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 453 (2nd Cir.1995) (stating that Connecticut courts would conclude that when an arbitration agreement is integrated into a larger contract, consideration for the contract as a whole would cover the arbitration clause as well); *Wilson Electrical Contractors, Inc. v. Minnotte Contracting Corp.*, 878 F.2d 167, 169 (6th Cir.1989) (finding that arbitration clause within larger contract did not require consideration independent from consideration of larger contract; also stating that *Prima Paint, supra,* "does not *require* separate consideration for an arbitration provision contained within a valid contract."); *Avid Engineering, Inc. v. Orlando Marketplace Ltd.*, 809 So.2d 1, 4 (Fla.Dist.Ct.App.2001) ("Because there was sufficient consideration to support the entire contract, the arbitration provision was not void for lack of mutuality of obligation."); *Sablosky v. Edward S. Gordon Co.*, 73 N.Y.2d 133, 538 N.Y.S.2d 513, 535 N.E.2d 643, 646 (1989) ("If there is consideration for the entire agreement that is sufficient; the consideration supports the arbitration option, as it does every other obligation in the agreement.").

We disagree with these cases. As previously discussed, under Maryland law, the role of the courts in a motion to compel or stay arbitration is strictly circumscribed; we may only consider whether an agreement to arbitrate the dispute at hand exists; we must not stray into the merits of any

is bilateral. *Id.* at 605. Thus, she concluded that United Healthcare Services's promise to arbitrate was illusory, and that the arbitration agreement was unenforceable. *Id.* at 605.

underlying disagreements. To do so could eclipse the role of the arbitrator, should a valid agreement exist, and therefore run afoul of strong Federal and Maryland policies favoring arbitration as a viable method of dispute resolution. We believe that the cases referred to above pay short shrift to this principle. Even if we could touch upon the underlying merits in a motion to compel or stay arbitration, however, we would decline to do so.

If we were to conclude that consideration from the underlying agreement was sufficient to support the arbitration agreement, we would be precluded from ever finding an arbitration agreement invalid for lack of consideration when performance of a contract has already occurred, no matter how illusory the arbitration agreement was.

Finally, we find that the Supreme Court's decision in *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), is distinguishable from the present case. In that case, Randolph financed the purchase of a mobile home through Green Tree Financial Corporation. *Id.* at 82, 121 S.Ct. at 517, 148 L.Ed.2d at 378. She signed a Manufactured Home Retail Installment Contract and Security Agreement that contained a provision providing that all disputes arising from the contract would be resolved in binding arbitration. *Id.* at 83, 121 S.Ct. at 518, 148 L.Ed.2d at 378. Randolph later sued Green Tree in the United States District Court for the District of Alabama, alleging that they violated the Truth in Lending Act and the Equal Credit Opportunity Act. *Id.* Green Tree responded with a motion to compel arbitration, which the District Court granted. *Id.*

Before the Supreme Court, Randolph contended that the arbitration clause contained within the Manufactured Home Retail Installment Contract and Security Agreement was unenforceable. *Id.* at 84, 121 S.Ct. at 518, 148 L.Ed.2d at 379. In support of that contention, she claimed that because the clause was silent as to who would pay for arbitration costs, there was a possibility that she would be responsible for the costs, which, if prohibitively expensive, would effectively pre-

clude her from pursuing her statutory claims. *Id.* at 89, 121 S.Ct. at 521, 148 L.Ed.2d at 382. The Supreme Court rejected Randolph's contention because it was too "speculative." *Id.* at 91, 121 S.Ct. at 521–22, 148 L.Ed.2d at 383–84. The record, the Court noted, did "not show that Randolph will bear such costs if she goes to arbitration." *Id.* at 90, 121 S.Ct. at 522, 148 L.Ed.2d. at 383.

The Arbitration Policy in the present case, unlike the agreement in *Green Tree Financial,* is not "silent" as to who is bound to arbitrate; it clearly and specifically gives United the sole discretion to modify, alter, amend, or revoke arbitration for any reason, at any time, but Cheek is bound to arbitrate "all employment-related disputes." No "speculation" as to the legal consequences of this Policy is necessary. Cheek is bound to arbitrate any disputes arising from the employment relationship, while United can revoke the policy at any time, for any reason, without notice or consent. Consequently, whether United chooses to exercise the option to revoke the policy or not begs the question, because it had not bound itself to a course of action.

We have concluded that the arbitration agreement in the present case is unenforceable for lack of consideration. This is so because United's promise to arbitrate was illusory, and because United's employment of Cheek cannot serve as consideration for the arbitration agreement. Accordingly, we need not, and do not, express any opinion as to Cheek's remaining claims.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY RESPONDENTS.*

HARRELL, Judge, dissenting.

I respectfully dissent. I do so because, in my view, the arbitration agreement between Appellant, Ronnie E. Cheek ("Cheek"), and Appellee, United Health Care of the Mid-

Atlantic, Inc., ("United"), was supported by consideration. Even assuming, *arguendo*, that the arbitration agreement was not supported by consideration independent from that of the employment contract of which it was a part, the consideration supporting the employment contract supported the arbitration agreement as well. Reasonably construed, the parties' mutual obligations with regard to arbitration were not illusory. Therefore, I would affirm the Circuit Court for Baltimore City's judgment compelling arbitration of the employment dispute between the parties.

## I.

"The interpretation of a written contract is ordinarily a question of law for the court and, therefore, is subject to de novo review by an appellate court." *DIRECTV v. Mattingly*, 376 Md. 302, 312, 829 A.2d 626, 632 (2003). "Maryland follows the law of objective contract interpretation." *Sy–Lene of Washington, Inc. v. Starwood Urban Retail II, LLC*, 376 Md. 157, 166, 829 A.2d 540, 546 (2003). "Under the objective test of contract interpretation, 'the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract.'" *Id.* (quoting *Long v. State*, 371 Md. 72, 84, 807 A.2d 1, 8 (2002)) (quoting, in turn, *Slice v. Carozza Prop., Inc.*, 215 Md. 357, 368, 137 A.2d 687, 693 (1958)). "A contract's unambiguous language will not give way to what the parties thought the contract meant or intended it to mean at the time of execution; rather, 'if a written contract is susceptible of a clear, unambiguous and definite understanding ... its construction is for the court to determine.'" *Sy–Lene*, 376 Md. at 167, 829 A.2d at 546 (citing *Langston v. Langston*, 366 Md. 490, 507, 784 A.2d 1086, 1095 (2001)). "When the clear language of a contract is unambiguous, the court will give effect to its plain, ordinary, and usual meaning, taking into account the context in which it is used." *Langston*, 366 Md. at 506, 784 A.2d at 1095. "A contract is ambiguous if it is subject to more than one interpretation when read by a reasonably prudent person." *Id.* "If the

contract is ambiguous, the court must consider any extrinsic evidence which sheds light on the intentions of the parties at the time of the execution of the contract." *Sy–Lene,* 376 Md. at 167–68, 829 A.2d at 547 (quoting *County Commissioners v. St. Charles,* 366 Md. 426, 445, 784 A.2d 545, 556 (2001)) (quoting, in turn, *Heat & Power v. Air Products,* 320 Md. 584, 596–97, 578 A.2d 1202, 1208 (1990)).

The 17 November 2000 letter from United to Cheek framed an offer of employment. That offer included conditions, such as the requirement that Cheek agree to be bound by United's "Employment Arbitration Policy". On 28 November 2000, Cheek authored an acceptance letter to United informing it that he was "delighted to accept United Healthcare's generous offer" and that "[a]ll of the terms of your employment letter are amenable to me." (Maj. op. at 142). The mutual obligations of the agreement to arbitrate and the consideration for the contract of employment render the agreement to arbitrate enforceable in the present case.

Cheek's unsworn and unsubstantiated assertion that he did not receive, until after commencing employment with United, the summary of United's Arbitration Policy referred to as an attachment in the 17 November 2000 offer letter, is unconvincing. His attorney's artfully framed statement, made in passing in the Response and Opposition to United's motion in the Circuit Court, that "no detail" of the policy was provided, is also unavailing. (Maj. op. at 141, n. 2). United's human resources representative (and the author of United's 17 November offer letter to Cheek), in an affidavit in support of United's motion to compel arbitration filed in the Circuit Court, appended a "true and correct copy of the offer letter that was provided to Mr. Cheek" and stated further that United's company policy was also to distribute a summary of the arbitration policy upon commencement of employment. Cheek conceded that he received a copy of the four-page summary of United's Arbitration Policy at the commencement of his employment. (Maj. op. at 143).

Even were one to assume Cheek did not receive a summary of United's Arbitration Policy with the 17 November offer letter, his unqualified acceptance of the offer, including the arbitration condition, was not obtained by duress, Cheek's suggestion to the contrary notwithstanding. This Court has held that the "test [for] duress is essentially composed of two elements: '(1) a wrongful act or threat by the opposite party to the transaction ..., and (2) a state of mind in which the complaining party was overwhelmed by fear and precluded from using free will or judgment.'" *Food Fair Stores, Inc. v. Joy*, 283 Md. 205, 217, 389 A.2d 874, 881 (1978) (quoting *Plechner v. Widener College, Inc.*, 418 F.Supp. 1282, 1294 (E.D.Pa.1976)). *See also Central Bank v. Copeland*, 18 Md. 305 (1862). If one hopes to benefit from the law of duress, then that person cannot place himself or herself into the situation which is the impetus for the deprivation of that person's free will. "The mere stress of business does not constitute duress when the person against whom it is asserted is not responsible for the circumstances." *Shillman v. Hobstetter*, 249 Md. 678, 693, 241 A.2d 570, 578 (1968).

Cheek implies that he was forced into employment with United, and thus bound by its "undetailed" arbitration policy, because he involuntarily was placed in a position where he had no alternative but to accept the terms of the contract after resigning from a position with his former employer. On the contrary, Cheek *freely and voluntarily* placed himself into a position whereby he had no other immediate employment opportunities, except with United. Cheek submitted his resignation to his former employer before he notified United of his acceptance of its employment offer. United is "not responsible for the circumstances" surrounding Cheek's decision to resign from his former employer before accepting United's offer and without apprising himself of any material information now claimed to be lacking or missing in United's offer. If Cheek did not have sufficient information regarding the announced condition of arbitration in the employment offered by United, he should not have resigned from his former employment and accepted United's offer before making further inqui-

ry. The terms of employment with United did not change between the offer date and Cheek's acceptance. Because United did not commit any wrongful act to coerce Cheek's unconditional acceptance of its employment offer as presented, Cheek's decision to resign "prematurely" from his former employer should have no bearing on the outcome of this case. *Shillman,* 249 Md. at 693, 241 A.2d at 578.

## II.

This Court dealt with the severability of an arbitration agreement from the contract of which it is a part in *Holmes v. Coverall North America, Inc.,* 336 Md. 534, 649 A.2d 365 (1994). The *Holmes* Court adopted the view "that an arbitration clause is a severable contract which is enforceable independently from the contract as a whole." *Id.* at 545, 649 A.2d at 370. The Court went on to state "that the mutual promises to arbitrate constitute a separate agreement contained in the contract." *Id.* at 547, 649 A.2d at 371. See also *Allstate v. Stinebaugh,* 374 Md. 631, 644, 824 A.2d 87, 95 (2003).

The U.S. Court of Appeals for the Fourth Circuit held to the same effect in *Johnson v. Circuit City Stores, Inc.,* 148 F.3d 373 (4th Cir.1998). That case involved an arbitration agreement that applied to all job applicants at a retail store in Maryland. The Fourth Circuit concluded that the parties' mutual agreement to arbitrate constituted sufficient independent consideration to support the agreement to arbitrate, standing on its own. In so doing, the *Johnson* court cited to *O'Neil v. Hilton Head Hosp.,* 115 F.3d 272 (4th Cir.1997), for the proposition that "an arbitration agreement was supported by adequate consideration where both parties agreed to be bound by the arbitration process." *Johnson,* 148 F.3d at 378. *O'Neil,* interpreting South Carolina law, involved the resort to arbitration in an employee discharge suit. The *O'Neil* court stated:

O'Neil first argues the contract to arbitrate was not supported by adequate consideration because the agreement

was not binding on the hospital. O'Neil's argument fails because its premise is mistaken.

Here the agreement to be bound by arbitration was a mutual one. The contract to arbitrate was proffered by the employer. Such a proffer clearly implies that both the employer and the employee would be bound by the arbitration process. If an employer asks an employee to submit to binding arbitration, it cannot then turn around and slip out of the arbitration process itself.

*O'Neil,* 115 F.3d at 274. The *O'Neil* court reiterated that "a mutual promise to arbitrate constitutes sufficient consideration for this arbitration agreement." *O'Neil,* 115 F.3d at 275 (*citing Rickborn v. Liberty Life Ins. Co.,* 321 S.C. 291, 468 S.E.2d 292, 300 (1996)).

## III.

Although it has been held that arbitration agreements may stand apart from the contracts of which they may be a part, if supported by independent consideration, they nonetheless also may be supported by the consideration that supports the contract as a whole. "Whether a number of promises constitute one contract (and are non-separable) or more than one is to be determined by inquiring 'whether the parties assented to all the promises as a single whole, so that there would have been no bargain whatever, if any promise or set of promises were struck out.'" *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 424, 87 S.Ct. 1801, 1816, 18 L.Ed.2d 1270 (1967) (quoting *U.S. v. Bethlehem Steel Corp.,* 315 U.S. 289, 298, 62 S.Ct. 581, 587, 86 L.Ed. 855 (1942)). "Contracts ordinarily require consideration to be enforceable." *Harford County v. Town of Bel Air,* 348 Md. 363, 382, 704 A.2d 421, 430 (1998). "A benefit to the promisor or a detriment to the promisee is sufficient valuable consideration to support a contract." *Vogelhut v. Kandel,* 308 Md. 183, 191, 517 A.2d 1092 (1986) (quoting *Shimp v. Shimp,* 287 Md. 372, 385, 412 A.2d 1228, 1234 (1980)). *See also Prince George's County v. Brown,* 348 Md. 708, 715, 705 A.2d 1158, 1161 (1998). "The Courts of Law, in the absence of fraud, will not inquire into

the adequacy of the value extracted for the promise so long as it has some value." *Blumenthal v. Heron,* 261 Md. 234, 242, 274 A.2d 636, 640 (1971).

In the present case, there is no indication that either Cheek or United intended severability of the arbitration agreement from the employment contract as a whole. The parties do not dispute that the employment contract as a whole is valid, enforceable, and supported by consideration.[1,2] As such, the arbitration provision within the contract is supported by the consideration for the contract and is enforceable.

The majority opinion in the present case commendably devotes attention to a review of cases from those of our sister jurisdictions that have addressed the consideration issue. *See* Maj. op. at 155–61. It then, however, places Maryland in the company of the decidedly minority view ("we join at least two other state courts" *See* Maj. op. at 155) that consideration from the overarching contract should not be looked to as consideration to support an arbitration agreement within the contract. The justification for this position, in the minds of the majority, is that to do so would require the court to

1. No reasonable argument could be mounted on these facts of a failure of consideration in the employment contract. United promised to pay Cheek an initial annualized base salary of $75,000, an initial annual minimum sales incentive totaling $90,000, and a sign-on bonus of $25,000, together with other benefits and "perks". In his acceptance of the offer, Cheek described it as "generous" and its terms "amenable" to him. Thus, the majority opinion's concern that a court would have to evaluate the sufficiency of consideration for the overall contract, in resolving the issue of enforcement of the arbitration agreement, is not a factor in this case. *See* Maj. op. at 153–54.

2. As a supplemental note, Cheek, as he sought to do here, should not be permitted to both sue for enforcement of the employment contract as a whole, while concurrently trying to enjoin enforcement of the arbitration clause contained therein. "No party suing on a contract should be able to enforce certain contract provisions while simultaneously attempting to avoid the terms of an arbitration provision contained therein." *U.S. v. Bankers Ins. Co.,* 245 F.3d 315, 323 (4th Cir., 2001) (*citing to Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH,* 206 F.3d 411, 418 (4th Cir., 2000), holding that it would "both disregard equity and contravene [the FAA]" to allow a plaintiff "to claim the benefit of the contract and simultaneously avoid its burdens.")

address the sufficiency of the consideration of the entire contract, a question, if raised, normally reserved for the arbiter. Maj. op. at 161. I fail to see this as a real problem. Courts are not required to inquire into the adequacy of consideration where there is at least some indicia of its presence. *See Blumenthal,* 261 Md. at 242, 274 A.2d at 640. Further, the majority of our sister jurisdictions have decided that consideration from the overall contract may be used to support an arbitration clause, recognizing that doing so will result in sending *more* cases to the arbiter.

I disagree further with the majority's rejection of the persuasive authority from the majority of courts that have addressed this issue. Maj. op. at 158–61. In *Avid Engineering v. Orlando Marketplace, Ltd.,* 809 So.2d 1 (Fla.App.2002), the written contract in question was "to provide engineering services for an expansion of retail space." The court there held that "because there was sufficient consideration to support the entire contract, the [embedded] arbitration provision was not void for lack of mutuality of obligation." *Avid,* 809 So.2d at 4. The Court of Appeals of New York also has held that "if there is consideration for the entire agreement that is sufficient; the consideration supports the arbitration option, as it does every other obligation in the agreement." *Sablosky v. Gordon Co., Inc.,* 73 N.Y.2d 133, 538 N.Y.S.2d 513, 516, 535 N.E.2d 643, 646 (1989) (involving the arbitration of commissions claimed to be due to real estate salespeople).

Federal courts, usually in the context of analyzing state laws, have analyzed and decided the issue in much the same way. The Third Circuit recently dealt with the issue of consideration for an arbitration agreement embedded in a contract in the case of *Blair v. Scott Specialty Gases,* 283 F.3d 595 (2002). In *Blair,* an employee brought a sexual harassment suit against her former employer. The court, ordering arbitration pursuant to a provision in the employment agreement, stated that "when both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced." *Blair,* 283 F.3d at 603. The *Blair* court went on to state that "a contract need not

have mutuality of obligation as long as the contract is supported by consideration." *Blair,* 283 F.3d at 604 (referencing "decisions that have found that continued employment may serve as consideration", such as *Hightower v. GMRI, Inc.,* 272 F.3d 239, 243 (4th Cir.2001); *Venuto v. Ins. Co. of N. Am.,* No. 98–96, 1998 WL 414723, at *5, 1998 U.S. Dist. Lexis 11050, at *14–*15 (E.D.Pa. July 22, 1998) (holding that an at-will employee's continued employment provides adequate consideration for an arbitration provision)). In the context of an alleged breach of an employment contract, the Sixth Circuit found that *"Prima Paint [supra ]* does not require separate consideration for an arbitration provision contained within a valid contract." *Wilson Electrical Contractors, Inc. v. Minnotte Contracting Corp.,* 878 F.2d 167, 169 (6th Cir.1989). In a case in which a franchisee sued the franchisor for fraud, the Eighth Circuit, interpreting Oklahoma law, stated that it believed that "mutuality of obligation is not required for arbitration clauses so long as the contract as a whole is supported by consideration." *Barker v. Golf U.S.A.,* 154 F.3d 788, 792 (8th Cir.1998). The *Barker* court relied on the Restatement (Second) of Contracts § 79 (1979), for the proposition that "if the requirement of consideration is met, there is no additional requirement of ... 'mutuality of obligation'." (Internal citation omitted in original.) *Id.* The Second Circuit addressed the issue of consideration for an overall contract "pouring over" to an arbitration clause in *Doctor's Associates v. Distajo,* 66 F.3d 438 (2d Cir.1995). In that case, the court, citing *Sablosky, supra,* stated that "the Connecticut courts would conclude that 'where the agreement to arbitrate is integrated into a larger unitary contract, the consideration for the contract as a whole covers the arbitration clause as well'." *Distajo,* 66 F.3d at 453. The *Distajo* court observed that "most courts facing this issue have arrived at the same conclusion [that the consideration supporting the overall contract can also support an arbitration provision, standing alone]." *Distajo,* 66 F.3d at 452 (citing to *Wilson, supra; Becker Autoradio U.S.A. v. Becker Autoradiowerk GmbH,* 585 F.2d 39, 47 (3rd Cir.1978); *W.L. Jorden & Co. v. Blythe*

*Indus.*, 702 F.Supp. 282, 284 (N.D.Ga.1988); *Willis Flooring, Inc. v. Howard S. Lease Constr. Co. & Assocs.*, 656 P.2d 1184, 1185 (Alaska 1983); *LaBonte Precision, Inc. v. LPI Indus. Corp.*, 507 So.2d 1202, 1203 (Fla.Dist.Ct.App.1987); *Kalman Floor Co. v. Jos. L. Muscarelle, Inc.*, 196 N.J.Super. 16, 481 A.2d 553 (1984), *aff'd for reasons stated below*, 98 N.J. 266, 486 A.2d 334 (1985)).

Two cases particularly representing the national majority view, to which the majority opinion here devotes substantial attention in an effort to explain them away (Maj. op. at 158–61), are, in many ways, the most apposite to the present case. Both cases involve the Appellee here, United, or a related entity, as a party and interpret and apply its apparently uniform arbitration policy. More specifically, both cases involve the clause within United's arbitration policy whereby it "reserves the right to alter, amend, modify, or revoke the Policy at its sole and absolute discretion with or without notice." *See* Maj. op. at 142–43.

*Kelly v. UHC Management Company, Inc.*, 967 F.Supp. 1240 (N.D.Ala.1997), involved an employment discrimination claim for which United sought implementation of its then-new arbitration policy. After reviewing the same contract language as is at issue in the present case, the *Kelly* court stated that the only showing necessary for enforcement is that the arbitration "agreements are supported by consideration, not 'mutuality of obligation'." *Kelly*, 967 F.Supp. at 1260. In *McNaughton v. United Healthcare Services*, 728 So.2d 592 (Ala.1998), an employee sued United for fraud and intentional interference with business relations relating to an interdepartmental transfer. United sought arbitration. The *McNaughton* court, applying Alabama law, stated that "United's providing at-will employment to [appellant] constituted sufficient consideration in exchange for [appellant's] agreement to arbitrate [his] employment disputes under United's arbitration policy." *McNaughton*, 728 So.2d at 595. The court reiterated that it had "consistently held that an employer's providing continued at-will employment is sufficient consideration to

make an employee's promise to his employer binding." 728 So.2d at 596.

The reasoning of the majority in the present case notwithstanding, I am persuaded that Maryland would be better advised to follow the national majority view permitting consideration for the contract to suffice as consideration for the embedded arbitration agreement.

## IV.

### A.

We generally should strive, whenever possible, to find arbitration agreements between private parties enforceable.[3] "The courts will prefer a construction which will make the contract effective rather than one which will make it illusory or unenforceable." *Kelley Constr. Co. v. Washington Suburban Sanitary Comm'n,* 247 Md. 241, 247, 230 A.2d 672, 676 (1967). United's Arbitration Policy, as explicated in the four page summary given Cheek, contains a provision under which the employer has "the right to alter, amend, modify, or revoke the Policy at its sole and absolute discretion at any time with or without notice." (Maj. op. at 142–43). This Court repeatedly has held generally that the reservation of the power to alter, amend, or terminate an agreement does not invalidate the agreement. "The conclusion should be drawn that an

---

**3.** Section 3–206(a) of the Courts and Judicial Proceedings Article of the Maryland Code (2002 Repl. Vol., 2003 Supp.), dealing with the validity of arbitration agreements, states that written arbitration agreements are "valid and enforceable, and [are] irrevocable, except upon grounds that exist at law or in equity for the revocation of a contract." Md.Code Ann., Cts. & Jud. Proc. § 3–206(a) (2002). Section 3–206(b), however, provides that § 3–206(a) "does not apply to an arbitration agreement between employers and employees . . . unless it is expressly provided in the agreement that this subtitle shall apply." In *Wilson v. McGrow, Pridgeon & Co.,* 298 Md. 66, 467 A.2d 1025 (1983), we stated that "the reference in § 3–206(b) to 'employers and employees' should be read as not including the arbitration agreement between employer and a single employee" and that the Court's "reading necessarily excludes from § 3–206(b) an agreement between an employer and a single employee to arbitrate future disputes." *Wilson,* 298 Md. at 78, 467 A.2d at 1031.

unlimited option to cancel does not invalidate a contract where it can be shown that it does not wholly defeat consideration." *Stamatiades v. Merit Music Service*, 210 Md. 597, 613, 124 A.2d 829, 837 (1956), citing *Tyler v. Capitol Indemnity Ins. Co.*, 206 Md. 129, 110 A.2d 528, 529 (1955). "It is only where the option reserved to the promisor is unlimited that his promise becomes illusory and incapable of forming part of a legal obligation." *Id.* at 614, 124 A.2d at 838. *See Yarnick v. King*, 259 Md. 241, 249, 269 A.2d 607, 611 (1970) (stating that "a power to terminate in case performance is not satisfactory may be expressly reserved without invalidating the contract"); *Prince George's County v. Brown*, 348 Md. 708, 715, 705 A.2d 1158, 1161 (1998) (stating that "a conditional promise may be consideration, and when a man acts in consideration of a conditional promise, if he gets the promise he gets all that he is entitled to by his act, and if, as events turn out, the condition is not satisfied, and the promise calls for no performance, there is no failure of consideration.").

United's reserved power to alter or terminate the arbitration agreement, however, was not without limit. That power should be read reasonably as exercisable only with regard to subsequent arbitrable conduct or acts, but not as to those acts which occurred prior to any asserted alteration or termination. Thus read, the Arbitration Policy was not illusory as United was bound to the original provisions of the arbitration agreement for all arbitrable incidents occurring prior to any purported change or revocation it might make with regard to the Policy.

### B.

The majority here focuses on an asserted lack of mutuality of obligation as a means to declare illusory United's promise to arbitrate. Such focus is short-sighted. We addressed the general problems associated with illusory contracts, versus those with a failure of consideration, in *Acme Markets, Inc. v. Dawson Enters., Inc.*, 253 Md. 76, 251 A.2d 839 (1969). In *Acme*, we stated that "when a contract is entered into, a power of termination may be expressly reserved to either

party or to both of them." *Acme*, 253 Md. at 86, 251 A.2d at 845. We went on to state that "the reservation of such a power to terminate does not invalidate the contract or render the consideration for a promise insufficient, so long as the party reserving the power to terminate is irrevocably bound for any appreciable period of time or has materially changed any of his legal relations or otherwise rendered some performance capable of operating as a consideration." *Id.* at 87, 251 A.2d at 846 (quoting 6 *A. Corbin, Contracts* § 1266 (1962)). We continued that "a contract is not made invalid for lack of mutuality by the fact that one of the parties and not the other is given the option of terminating the contract on some condition." *Id.* (quoting 1A *A. Corbin, Contracts* § 265 (1963)). "Although an option to terminate may be unilateral and appear to lack mutuality, it has been held that if the provisions are quite clear as to one party's option a court cannot be expected to relieve the other party of the consequences thereof because the bargain as to him was improvident, rash, foolish or oppressive". *Id.* at 88–89, 251 A.2d at 847. When melded with the objective theory of contract interpretation, the result is identical to that discussed by this Court over fifty years ago, "where the right to terminate a contract is reserved in the instrument itself, in the absence of fraud, undue influence, or mistake, such reservation is valid and will be enforced, if not contrary to equity and good conscience." *Id.* at 88, 251 A.2d at 847 (quoting *Kahn v. Janowski*, 191 Md. 279, 285–86, 60 A.2d 519, 521 (1948)).

As noted earlier, the arbitration agreement between United and Cheek is not illusory because the terms of the agreement, as construed here, may not be revoked or modified by United as to a particular arbitrable dispute after it has arisen. Stated otherwise, United is bound to the terms of the arbitration agreement as it exists at the time an arbitrable incident arises. It could not revoke or change the terms regarding prior acts triggering the then-prevailing arbitration provisions because "no party has a right to rescind or modify a contract merely because he finds, in the light of changed conditions, that he has made a bad deal." *Harford County*, 348 Md. at 384, 704

A.2d at 431. I note, however, that there is not the slightest hint in this record that United proposed any such change in, or revocation of, the Arbitration Policy incorporated in its contract with Cheek.

## V.

United gave Cheek an opportunity to review and/or inform himself about the Arbitration Policy before he accepted the employment offer. Cheek freely entered into the employment contract without further inquiry into any "details" of that Policy. Cheek agreed to the arbitration agreement almost seven months before the subject arbitrable dispute arose. During that time, United made no attempt to alter, amend, modify, or revoke its Arbitration Policy. United was as bound to the Arbitration Agreement as was Cheek for the dispute giving rise to the present litigation. As such, United's promise was not illusory, and there was neither lack or failure of consideration or lack of mutuality of obligation. The contract contained a valid arbitration agreement, which was supported by consideration. As a result, it is my view that the parties, as ordered by the Circuit Court, should submit this dispute to arbitration.